# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

Patricia L. Amos, *et al.*

    Plaintiffs,

v.

PPG Industries, *et al.*

    Defendants.

Case No. 2:05cv70

Judge Michael H. Watson

## OPINION AND ORDER

Before the Court are the following:

1. The August 30, 2007 Motion of Defendants PPG Industries Retiree Healthcare Plan, PPG Industries Ohio, Inc, PPG Industries Inc, PPG International Inc. (hereinafter collectively "PPG") to Dismiss or, in the Alternative, for Partial Summary Judgment (Doc. 63). Plaintiffs George Owens, Ruth Marconi, Douglas A. Coupland, James Dailey, Patricia L Amos, James S. Hutchison, Eldon Bailor, Sally Jones (hereinafter collectively "Plaintiffs") filed a Memorandum in Response on September 20, 2007 (Doc. 64). PPG filed a Reply Memorandum on October 1, 2007 (Doc. 67).

2. The May 23, 2008 Motion of Plaintiffs for Leave to File (Doc. 69). PPG filed a Memorandum in Opposition on June 12, 2008 (Doc. 70). Plaintiffs filed a Reply Memorandum on June 19, 2008 (Doc. 71). For good cause

shown, the May 23, 2008 Motion of Plaintiffs for Leave to File (Doc. 69) is hereby **GRANTED**.

3. The January 28, 2009 Motion of Plaintiffs for Leave to File (Doc. 76). PPG filed a Memorandum in Opposition on February 17, 2009 (Doc. 79). Plaintiffs filed a Reply Memorandum on February 24, 2009 (Doc. 80). For good cause shown, the January 28, 2009 Motion of Plaintiffs for Leave to File (Doc. 76) is hereby **GRANTED**.

Plaintiffs in this matter are a class of individuals who at one time worked for, or whose deceased spouses worked for, PPG. Plaintiffs receive medical benefits from PPG provided by collective bargaining agreements (hereinafter "CBAs") negotiated by various labor unions on Plaintiffs' behalf. In 2001, PPG announced its intention to shift some of the cost of these medical benefits to the retired workers and survivors. Plaintiffs filed the present action seeking damages for breach of contract and for declaratory judgment requiring PPG to fully cover the cost of these medical benefits.

PPG's Motion for Partial Summary Judgment is ripe for review. For the reasons set forth below, PPG's Motion is **GRANTED**.

## I. BACKGROUND

The facts here are not in dispute. Plaintiffs are members of a class representing workers employed by, or whose spouses were employed by, PPG. Plaintiffs receive medical benefits paid for by PPG as agreed to in various CBAs which were negotiated by certain labor unions. In 2001, PPG unilaterally determined that it would impose higher premium costs associated with these health benefits.

Subsequently, three labor unions, the International Chemical Workers Union Council of the United Food and Commercial Workers Union; the United Steel Workers of America, AFL-CIO-CLC; and the International Association of Machinists and Aerospace Workers, AFL-CIO (hereinafter collectively "Unions"), individually filed suit in the United States District Court for the Western District of Pennsylvania (hereinafter "District Court") against PPG (hereinafter "Pennsylvania cases") to force PPG to arbitrate before these costs could be imposed. In response, PPG argued the rights to these benefits never vested and, therefore, it could not be forced to submit to arbitration. In ruling on PPG's summary judgment motion, the District Court noted that in each case in order to determine the arbitrability of the benefit provisions, the issue of whether or not these rights had vested had to be decided. In each case the District Court held that the rights had not vested. *United Steel Workers, AFL-CIO-CLC v. PPG Indus.*, 2006 U.S. Dist. LEXIS 14974 at *5–6 (W.D. Pa. Mar. 31, 2006) (hereinafter "*USW*").[1] The Court of Appeals for the Third Circuit affirmed the District Court's decision in a consolidated appeal. *Int'l Chem. Workers Union Council of the UFCW v. PPG Indus.*, 236 Fed. Appx. 789, 794 (3d Cir. 2007).

While the Pennsylvania cases were pending, Plaintiffs filed this action. The Court issued a stay pending the disposition of the appeal in the Third Circuit.

---

[1] The Court notes that on September 30, 2005, Magistrate Judge Hay issued a Report and Recommendation (hereinafter "Report") with respect to PPG's motion for summary judgment. In reaching its decision, the District Court reviewed the Report and the objections of the Unions. For ease of reading, whenever the Court cites to the Report, it will be "Report at p. ___".

## II. STANDARD OF REVIEW

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

The Court may grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986); *Petty v. Metropolitan Government of Nashville-Davidson County*, 538 F.3d 431, 438-39 (6th Cir. 2008).

The non-moving party bears a burden once the movant has pointed to record evidence showing that there are no genuine issues of material fact:

> Opposing Party's Obligation to Respond. When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided in this rule-set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e). Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford &*

Co., 886 F.2d 1472, 1476 (6th Cir. 1989) (quoting *Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.*; *see also Petty*, 538 F.3d at 438. It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Street*, 886 F.2d at 1476 (quoting *Matsushita*, 475 U.S. at 586). Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000); *Henderson v. Walled Lake Consol. Schools*, 469 F.3d. 479, 487 (6th Cir. 2006). The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. *Reeves*, 530 U.S. at 150-51. Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

Thus, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

## III. ANALYSIS

PPG argues the doctrine of collateral estoppel bars Plaintiffs from bringing suit in this Court for recovery of their healthcare benefits. Collateral estoppel, or "issue preclusion," has four requirements which must be met in order for a previous judgment to bar subsequent litigation on an issue:

(1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;

(2) determination of the issue must have been necessary to the outcome of the prior proceeding;

(3) the prior proceeding must have resulted in a final judgment on the merits; and

(4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Smith v. Securities and Exchange Commission*, 129 F.3d 356, 362 (6th Cir. 1997) (citing *Detroit Police Officers Ass'n v. Young*, 824 F.2d 512, 515 (6th Cir. 1987)).

### A. The same issue was raised and litigated in the Pennsylvania court.

As Plaintiffs point out, the present suit and those brought by the Unions do not raise the same claims. The Unions sought to force PPG to arbitrate, whereas Plaintiffs are seeking damages and declaratory relief reinstating their medical benefits. This does not defeat PPG's motion, because in both cases the critical issue is whether the right to the healthcare benefits vested. The District Court determined the rights at issue had not vested and, therefore, PPG was not required to arbitrate. *USW*, 2006 U.S. Dist. LEXIS 14974 at *5–6. Here, a determination as to whether Plaintiffs' right to

medical benefits has vested would be essential to the outcome of the case. If such benefits have not vested, PPG is fully entitled to alter or abolish those benefits and Plaintiffs have no cause of action. See *Inter-Modal Rail Emples. Ass'n v. Atchison, Topeka & Santa Fe Ry.*, 520 U.S. 510, 515 (1997) (noting that an employer may alter a welfare plan unless it has "contractually cede[d] its freedom" by vesting those rights); *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) (noting that "[e]mployers . . . are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans") (citing *Adams v. Avondale Industries, Inc.*, 905 F.2d 943, 947 (6th Cir. 1990)).

"When an issue is properly raised, . . . submitted for determination, and is determined, the issue is actually litigated . . . ." *Gilbert v. Ferry*, 413 F.3d 578, 581 (6th Cir. 2005) (quoting Restatement (Second) of Judgments § 27). In the Pennsylvania cases, PPG raised the vesting issue with the District Court for its determination, which the District Court did determine. *USW*, 2006 U.S. Dist. LEXIS 14974 at *4–6; Report at 6. Accordingly, the first factor of the collateral estoppel standard is satisfied.

### B. The vesting issue was critical to the determination of the prior action.

Next, Plaintiffs argue that the determination of whether the rights had vested in the Pennsylvania cases was not essential to those actions. Even a cursory reading of the Report reveals this assertion is patently false. No less than half of the Report is dedicated to a discussion of whether the retirees' rights under the CBAs had vested. Having determined that the rights did not vest, the Report recommended that the District Court grant PPG's motion for summary judgment. Report at p. 31, *USW*, 2006

U.S. Dist. LEXIS 14974 (No. 01-1601). The District Court adopted the Report and granted the motion. *USW*, 2006 U.S. Dist. LEXIS 14974 at *6.

In *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, the Sixth Circuit held that an issue was not precluded when the decision in the prior litigation was based on an independent legal justification. 253 F.3d 900, 909-910 (6th Cir. 2001). The *Eliadis* court held that estoppel would be improper because there had been no incentive for the plaintiff to strongly argue this issue in the previous case because of the other justification for the court's holding. It was also noted how the issue had been given only cursory treatment in the previous court's ruling. *Id.* Here, by contrast, the determination that the rights had not vested was the only deciding factor in the District Court's ruling and it devoted substantial analysis to the issue. As such, whether or not the rights had vested was a necessary determination in the prior proceeding and, therefore, the second prong of the collateral estoppel test is satisfied.

### C. The prior proceeding resulted in a final judgment on the merits.

The prior proceeding resulted in the District Court granting PPG's motion for summary judgment. *USW*, 2006 U.S. Dist. LEXIS 14974 at *6. An order granting summary judgment is a final judgment on the merits. *Dunn v. Savage (In re Saffady)*, 524 F.3d 799, 806 (6th Cir. 2008); *see also* Fed. R. Civ. P. 54(a). Plaintiffs do not challenge this issue. Therefore, the third factor of the collateral estoppel test is met.

### D. The plaintiffs had a full and fair opportunity to litigate the issue.

The final requirement of collateral estoppel is that the plaintiff must have had an opportunity to litigate the issue. This factor raises the most difficult issue in this matter.

Plaintiffs were not parties to the Pennsylvania cases. However, it is not always a requirement that a plaintiff actually take part in a previous action in order to be estopped from bringing a subsequent suit. The Supreme Court has noted six exceptions where a party may be estopped despite having not been a party in the previous litigation:

> (1) [a] person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement,
>
> (2) "substantive legal relationship[s]" between the person to be bound and a party to the judgment exist,
>
> (3) a non-party was "adequately represented by someone with the same interests who [wa]s a party" to the suit,
>
> (4) the non-party "assume[d] control" over the litigation in which that judgment was rendered,
>
> (5) a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy, and
>
> (6) a special statutory scheme may "expressly foreclos[e] successive litigation by nonlitigants . . . if the scheme is otherwise consistent with due process."

*Taylor v. Sturgell*, 128 S. Ct. 2161, 2172–73 (2008) (internal citations omitted).

The relevant exception currently is where a nonparty's interest was adequately represented by someone with the same interests in the prior litigation. In *Taylor*, Justice Ginsburg defined adequate representation:

> A party's representation of a nonparty is "adequate" for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and her representative are aligned . . . and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty . . . . In addition, adequate representation sometimes

requires (3) notice of the original suit to the persons alleged to have been represented . . . .

*Id.* at 2176 (internal citations omitted).

Though the relief sought by the Unions in the Pennsylvania cases differs from that sought by Plaintiffs, the parties do share a common *interest* in that both sides sought to have the benefits restored. The only difference is the means by which each party chose to achieve the desired result. As for the second factor, a labor union is by its very nature a representative organization who works to serve the needs of its members. *See* 29 U.S.C. § 152(4) (defining "representative" to include "labor organization") and (5) (defining "labor organization"); *see also* Black's Law Dictionary (8th ed. 2004) (defining "union" as "[a]n organization formed to negotiate with employers, on behalf of workers collectively, about job-related issues such as salary, benefits, hours, and working conditions. Unions generally represent skilled workers in trades and crafts"). Furthermore, in the Pennsylvania cases, the Unions established their representative function in their respective complaints. *See* Complaint at 1–2, *USW*, 2006 U.S. Dist. LEXIS 14974 (No. 01-1601); Complaint at 1–2, *Int'l Chem. Workers Union of the United Food and Commercial Workers Union v. PPG Indus.*, 2006 U.S. Dist. LEXIS 14981 (W.D. Pa. 2006) (No. 01-1751); Complaint at 2, *Local Lodge 470 of Dist. 161, Int'l Ass'n of Machinist and Aerospace Workers, AFL-CIO*, 2006 U.S. Dist. LEXIS 14979 (W.D. Pa. 2006) (No.01-2110). Accordingly, the second factor of the *Taylor* standard for adequate representation is satisfied.

Notice is not a requirement in all representative suits in order for issue preclusion to apply. *See Taylor*, 128 S. Ct. at 2176 n.11; *Richards v. Jefferson County*, 517 U.S.

793, 805 (1996) (refusing to bind plaintiffs based on a prior decision where the plaintiffs had received neither notice *nor* adequate representation). Nonetheless, Plaintiffs had ample notice that the Unions were suing on their behalf in Pennsylvania. PPG filed a motion to dismiss this action based on the pending litigation in the Pennsylvania cases on March 28, 2005, and attached the complaint from the Pennsylvania cases to its motion. This motion was served on Plaintiffs' counsel. The Report did not issue until September 30, 2005, and the cases were not resolved until March 31, 2006. As such, for at least six months prior to the Report, Plaintiffs had notice of the Pennsylvania cases and could have moved in the District Court for the Western District of Pennsylvania to join that litigation. *See* Fed. R. Civ. P. 24. Additionally, the firm representing Plaintiffs also filed the complaint for Chemical Workers in the Pennsylvania cases. (Doc. 37, pp.11–12); complaint at 4, *Int'l Chem. Workers*, 2006 U.S. Dist. LEXIS 14981. Under these circumstances, it can hardly be said that Plaintiffs had no notice of the pending Pennsylvania cases.

### E. Additional requirements for collateral estoppel.

Even if the above listed factors are satisfied, there are further requirements that a defendant must show in order to invoke collateral estoppel:

> The Supreme Court has established a three-part test to determine if applying collateral estoppel is also appropriate: (1) "whether the issues presented by [the subject] litigation are in substance the same as those resolved [in the prior case]"; (2) "whether controlling facts or legal principles have changed significantly since the [prior] judgment"; and (3) "whether other special circumstances warrant an exception to the normal rules of preclusion.

*Living Care Alternatives of Kirkersville, Inc. v. United States*, 247 Fed. Appx. 687, 694 (6th Cir. 2007) (quoting *Montana v. United States*, 440 U.S. 147, 155 (U.S. 1979)).

As discussed above, the issue Plaintiffs seek the Court to determine - whether the rights have vested - is the same issue resolved by the District Court. As for the second factor, no substantive change in facts or the legal issues occurred since the Pennsylvania cases were decided. Indeed, Plaintiffs commenced this case while the Pennsylvania cases were pending, and all of the litigation is the result of PPG's single act of imposing higher healthcare costs.

Turning to the third factor, Plaintiffs argue the existence of Sixth Circuit case law discussed below should have placed PPG on notice that the decision in the Pennsylvania cases might not bar a suit by the retired members themselves. However, the danger that a defendant might be surprised by a subsequent suit is not one of the harms which issue preclusion aims to prevent, see *Taylor*, 128 S. Ct. at 2171 (quoting *Montana*, 440 U.S. at 153–54), and Plaintiffs cite to no authority that even hints at the notion that notice to a defendant of potential further litigation serves as an exception to collateral estoppel. Accordingly, Plaintiffs fail to identify any special circumstances which warrant an exception to collateral estoppel in this case.

### F. The Unions did not need to obtain the retirees' consent in order for collateral estoppel to apply.

Plaintiffs' main rebuttal against PPG's motion is that Sixth Circuit case law requires a union to obtain the consent of retirees/survivors before it can represent them. See *United Steel Workers of America v. Cooper Tire & Rubber Co.*, 474 F.3d 271 (6th Cir. 2007); *Cleveland Elec. Illuminating Co. v. Utility Workers Union of America*, 440 F.3d 809 (6th Cir. 2006). Because the Unions in the Pennsylvania cases did not obtain

2:05-cv-70

Page 12 of 14

Plaintiffs' consent prior to seeking court-ordered arbitration, that litigation, according to Plaintiffs, cannot bind them. This argument is flawed for several reasons.

Both *Cleveland Electric* and *Cooper Tire* require a union to obtain the consent of its retired members if it intends to arbitrate on their behalf. *Cooper Tire*, 474 F.3d at 283; *Cleveland Elec.*, 440 F.3d at 817. In the Pennsylvania cases, however, the Unions sued *to compel* arbitration. Neither *Cleveland Electric* nor *Cooper Tire* explicitly demands consent at this stage of the proceedings. While the argument could be made that the rule expounded in these two cases should be extended to the situation at hand, this point is moot for the reasons discussed below.

What is ultimately fatal to Plaintiffs' claim is that the Third Circuit, unlike the Sixth Circuit, has no requirement that a union obtain the consent of its retired members before litigating on their behalf. It is fatal because Plaintiffs are unable to attack the binding effect of the Pennsylvania cases due to this distinction in case law. As the Supreme Court explains:

> [w]here, for example, a court in deciding a case has enunciated a rule of law, the parties in a subsequent action upon a different demand are not estopped from insisting that the law is otherwise, merely because the parties are the same in both cases. But a *fact, question or right* distinctly adjudged in the original action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view or by an erroneous application of the law.

*Montana*, 440 U.S. 162 (emphasis in original) (internal quotations omitted). Therefore, whether the District Court and Third Circuit correctly or incorrectly determined the vesting question, issue preclusion applies. The retirees and survivors are barred by collateral estoppel because the previous litigation adjudged the *right* to healthcare benefits.

In *Cleveland Electric* and *Cooper Tire*, the Sixth Circuit imposed the consent requirement because it knew the retirees in those cases would be bound by an adverse decision that resulted from the union's arbitration. *Cooper Tire*, 474 F.3d at 283 ("Our concern here is not for Cooper, but rather that the Retirees and Survivors will be bound by an unfavorable arbitration decision to which they never consented"); *Cleveland Elec.*, 440 F.3d at 817 ("the retirees could lose their rights to pursue their claims directly with Cleveland Electric if the Union obtains an unfavorable arbitration decision"). Currently, the Unions *did* obtain an unfavorable decision[2], and this Court cannot ignore this result simply because the decision obtained did not follow the law of this Circuit in a forum which does not adhere to the same rule. Consequently, the Plaintiffs are bound by the adverse results obtained from the Unions' litigation.

## IV. CONCLUSION

For the reasons discussed above, the August 30, 2007 Motion of PPG to Dismiss or, in the Alternative, for Partial Summary Judgment (Doc. 63) is hereby **GRANTED**.

**IT IS SO ORDERED.**

Michael H. Watson
United States District Court

---

[2]Though the Unions obtained an unfavorable decision by way of litigation, not arbitration, a ruling by the District Court is certainly no less binding than an arbitrator's decision. *See, e.g., Taylor*, 128 S. Ct. at 2178–79.