UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Patricia L. Amos, *et al.*,

    Plaintiffs,               Case No. 2:05–cv–70

    v.                    Judge Michael H. Watson

PPG Industries, Inc., *et al.*,

    Defendants.

## OPINION AND ORDER

Plaintiffs bring this class action lawsuit against Defendants Axiall Corporation and Georgia Gulf Corporation (collectively, "Axiall"), challenging Axiall's unilateral modifications to collectively-bargained retiree health benefits.

On March 11, 2015, the parties moved for preliminary approval of a Settlement Agreement and Release ("Settlement Agreement").  ECF No. 266, The Court granted preliminary approval on April 8, 2015, ECF No. 270, and Axiall now moves, unopposed, for final approval of the Settlement Agreement.  ECF No. 302.  For the following reasons, the Court **GRANTS** Axiall's motion.

### I.    Approval of Proposed Class Settlement

"This Court recognizes that settlement of class actions is generally favored and encouraged." *Wess v. Storey*, No. 2:08–cv–623, 2011 WL 1463609, at *1 (S.D. Ohio Apr. 14, 2011); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 371 (S.D. Ohio 2006).  "Nonetheless, '[c]lass actions are unique creatures with

enormous potential for good and evil.'" *In re Broadwing*, 252 F.R.D. at 371–72
(citation omitted). "One such evil the court must guard against is a collusive
tradeoff of a large award of attorney fees for class counsel in return for a small
settlement for the class and a release of claims." *Id*. at 372; *see also Moulton v.
U.S. Steel Corp.*, 581 F.3d 344, 351 (6th Cir. 2009). "In recognition of this, Fed.
R. Civ. P. 23(e) provides important protections for class members, including the
named plaintiffs, whose rights may not have been given due regard by the
negotiating parties." *In re Broadwing*, 252 F.R.D. at 372. To this end, Rule 23(e)
requires three steps for the approval of a proposed class action settlement:

1. The Court must preliminarily approve the proposed settlement;

2. Members of the class must be given notice of the proposed
   settlement; and

3. A fairness hearing must be held, after which the court must
   determine whether the proposed settlement is fair, reasonable and
   adequate.

Fed. R. Civ. P. 23(e); *In re Broadwing*, 252 F.R.D. at 372. In the instant case, all
three steps have been satisfied. First, the Court preliminarily approved the
proposed Settlement on March 11, 2015. ECF No. 270. Second, the parties
gave notice of the proposed settlement to the Settlement Class ("Notice"). ECF
Nos. 272-1 & 266-3. The Court finds that the Notice was the best notice

practicable under the circumstances.[1]  Third, the Court conducted a fairness hearing on July 13, 2015.  Thus, it only remains for this Court to decide whether the Settlement Agreement is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e)(1)(C).

The determination of whether a proposed class settlement is fair, reasonable and adequate requires the Court to consider and balance several factors, which include:

1. Plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement;

2. The complexity, expense and likely duration of the litigation;

3. The stage of the proceedings and the amount of discovery completed;

4. The judgment of experienced trial counsel;

5. The nature of the negotiations;

6. The objections raised by the class members; and

7. The public interest.

---

[1] On March 13, 2015, Axiall sent the Notice to the appropriate federal and state attorneys general as required under the Class Action Fairness Act of 2005.  Parker Decl. ¶ 2, ECF No. 302-2; ECF No. 272-1.  No attorney general objected to the settlement.  Parker Decl. ¶ 2, ECF No. 302-2.  On April 10, 2015, Axiall issued individual notices by first class mail to all Settlement Class Members.  *Id.* ¶ 3; ECF No. 266-3. The five notices that were returned were subsequently re-sent based on updated information and were not returned again.  Parker Decl. ¶ 3, ECF No. 272-1.

*In re Broadwing*, 252 F.R.D. at 372; *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.C.C.*, 636 F.3d 235, 244–45 (6th Cir. 2011).

### A. Likelihood of Ultimate Success on the Merits Balanced Against the Amount and Form of Relief Offered in the Settlement

#### 1. The Likelihood of Ultimate Success on the Merits

"'The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits.'" *In re Broadwing*, 252 F.R.D. at 372 (citation omitted).

Plaintiffs in this litigation are retirees of PPG Industries, Inc. ("PPG") or Axiall Corporation, or at separate times, PPG and Axiall Corporation. Plaintiffs commenced suit against PPG in 2005 for PPG's unilateral modifications to collectively-bargained retiree health benefits. Plaintiffs added Axiall to the action in 2013 because Axiall acquired two PPG plants, assumed administration of the retiree health benefits of the putative litigation class who had retired from those plants, and subsequently implemented additional changes to their benefits.

Plaintiffs contend that the health benefits for these retirees are vested and cannot be unilaterally modified and/or terminated. PPG and Axiall maintain the opposite—that those benefits are not vested and are susceptible to unilateral modification or termination.

While the parties remain convinced of their respective positions, they also recognize the inherent risks of continuing to advance those positions in litigation.

At the time the parties reached a settlement, these risks were amplified by pending litigation in other courts.  First, at the time of the parties' mediation, the United States Supreme Court had pending before it *M&G Polymers LLC v. Tackett*, No. 13-1010, a case involving consideration of the standard for determining whether collectively bargained retiree medical benefits are vested. The Supreme Court's decision in that case, issued in January 2015, only increased the legal uncertainty for Plaintiffs, as it invalidated the plaintiff-friendly "*Yard-Man* inference" used by the United States Court of Appeals for the Sixth Circuit in interpreting contract provisions governing retiree insurance benefits. *M&G Polymers USA, LLC v. Tackett*, 135 S.Ct. 926, 935–36 (2015).

Also pending at the time the parties were negotiating was Axiall's declaratory judgment action filed in the Western District of Pennsylvania, seeking a declaration that Plaintiffs' benefits were not vested.  That court granted Plaintiffs' motion to dismiss that action, and Axiall's appeal of that decision remains pending before the United States Court of Appeals for the Third Circuit.

The uncertainty flowing from these actions calls into question Plaintiffs' likelihood of success on the merits.

### 2. The Amount and Form of Relief Offered in Settlement

In evaluating the amount and form of relief offered in Settlement, the Court is mindful of the notion that "[t]he determination of what constitutes a 'reasonable'

settlement is not susceptible of a mathematical equation yielding a particularized sum. Rather . . . in any case, there is a range of reasonableness with respect to a settlement." *In re Broadwing*, 252 F.R.D. at 373 (internal quotation marks and citation omitted). Here, the Settlement Agreement provides Plaintiffs and their spouses and dependents with post-retirement health benefits through December 31, 2025, the amount and form of which differs based on the Medicare eligibility of the settlement class members.

### Non-Medicare Eligible Settlement Class Members

Axiall Corporation will continue to provide its benefits plan for non-Medicare eligible Settlement Class members through December 31, 2015. From January 1, 2016 through December 31, 2025, Axiall Corporation will continue to provide each non-Medicare eligible member with a monthly credit of $495 to be used for reimbursement for qualified medical expenses. When these members become Medicare eligible, they may receive the benefits provided to Medicare-eligible Settlement Class members as described below.

### Medicare-Eligible Settlement Class Members

Axiall Corporation will continue to provide a monthly credit of $100 to Medicare-eligible Settlement Class members through December 31, 2015. From January 1, 2016 through December 31, 2025, Axiall Corporation will provide each Medicare-eligible member with a monthly credit of $100 to be used for

reimbursement for qualified medical expenses.  Additionally, Axiall Corporation will provide each member with a one-time lump sum subsidy credit of $325.

The amount and form of this relief balanced against the Plaintiffs' likelihood of success on the merits weighs in favor of approving the Settlement Agreement. In contrast to the uncertainty of litigation, the Settlement Agreement provides immediate certainty to Plaintiffs by securing their medical and prescription drug benefits for a ten-year period.  After ten years of litigation, this certainty outweighs the risk of proceeding on the merits of Plaintiffs' claims and receiving nothing.

Accordingly, this factor weighs in favor of approving the proposed Settlement Agreement.

## B. Complexity, Expense and Likely Duration of the Litigation

"In general, '[m]ost class actions are inherently complex[,] and settlement avoids the costs, delays, and multitude of other problems associated with them.'" *In re Broadwing*, 252 F.R.D. at 373 (citation omitted).  Consistent with this generalization, this case presents substantial risks, expense, and delays absent settlement.

The parties have been litigating for over ten years.  If litigation continues, there will inevitably be additional discovery.  There will also likely be summary judgment motions, pre-trial motions, Court case management conferences and

hearings, and trial preparation—which would result in the expenditure of many additional hours of effort and great additional expense for the parties and the Court.

Furthermore, if the Settlement Class were to recover a judgment greater than the current Settlement Agreement, the additional delay due to post-trial motions and the appellate process could deny Class Members a recovery for years. *See In re Broadwing*, 252 F.R.D. at. 374. Given the time value of money, a future recovery, even one greater than the proposed Settlement Agreement, may be less valuable to the Settlement Class than receiving the benefits of the proposed Settlement Agreement now. To delay this matter further would not substantially benefit the Settlement Class. *See Id.* Settling the case now will result in an enormous saving of time and money for the parties, the Settlement Class, and the Court.

Moreover, further delay due to continued litigation of this case would impose a substantial detriment to the Settlement Class, which consists primarily of elderly and/or disabled members who may not survive protracted future litigation. The Settlement Agreement, on the other hand, provides Class Members with immediate certainty regarding their medical and prescription drug benefits.

This factor therefore also weighs in favor of approving the Settlement Agreement.

### C. Stage of the Proceedings and the Amount of Discovery Completed

To ensure that class representatives have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement Agreement, the Court must consider the stage of the proceedings and discovery. *In re Broadwing*, 252 F.R.D. at 374; *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 502 (E.D. Mich. 2000). "[T]he absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *UAW v. General Motors Corp.*, No. 05–cv–73991, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006) (citing cases).

While Plaintiffs and Axiall have not engaged in formal discovery, counsel represented at the fairness hearing that the parties informally exchanged information. Moreover, there has been extensive investigation and discovery between Plaintiffs and PPG since 2005. Specifically, counsel represented at the fairness hearing that discovery between Plaintiffs and PPG has produced over 100,000 documents and resulted in over twenty-five depositions. Plaintiffs have also obtained discovery from PPG regarding PPG's corporate transaction with Georgia Gulf Corporation.

Hence, the record reflects that the parties have been afforded an adequate opportunity to conduct sufficient discovery to be fully apprised about the legal and factual issues presented as well as the strengths and weaknesses of their cases. *See In re Broadwing*, 252 F.R.D. at 374 (citation omitted). The Court is therefore confident that both sides made a well-informed decision to enter into the Settlement Agreement and finds this weighs in favor of approving the proposed Settlement Agreement.

### D. Judgment of Experienced Trial Counsel

"It is well settled that, in approving a class action settlement, a court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *In re Broadwing*, 252 F.R.D. at 375 (citation omitted). "'Significantly, however, the deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered.'" *Id.* (citation omitted). Additionally, "'the court should insure that the interests of counsel and the named plaintiffs are not unjustifiably advanced at the expense of unnamed class members.'" *Id.* (citation omitted).

The Settlement Class is represented by qualified counsel who have significant experience in, *inter alia*, complex class action practice, employment litigation, Employee Retirement Income Security Act ("ERISA") litigation, and collective bargaining litigation. *See* Hurt Decl., Ex. A, ECF No. 311-1. The

breadth of counsel's experiences is discussed in greater detail below.  In sum, lead counsel for Plaintiffs and Axiall each have over thirty years of experience in comparable litigation, and co-counsel have been litigating similar class action cases for decades.

Counsel have competently evaluated the strength of their proofs in the present case and are well-situated to evaluate the strengths of Plaintiffs' claims and Axiall's defenses.  Based on their knowledge and experience, counsel urge final approval of the Settlement Agreement.  In addition, the Court determines that the Settlement Agreement has been negotiated at arm's length by the class representatives and their counsel on behalf of all Settlement Class Members.

This factor therefore weighs in favor of approving the Settlement Agreement.

### E. Nature of the Negotiations

The Court gives significant weight to the belief of experienced counsel that the settlement is in the best interest of the class.  *In re Broadwing*, 252 F.R.D. at 375.  Initially, however, the Court should determine whether the settlement was non-collusive and was reached through arm's length negotiations.  *Id.*

It is undisputed that the Settlement Agreement in this case is the product of arm's length negotiations by experienced counsel facilitated by nationally recognized mediator Mark Rudy.  Counsel represented at the fairness hearing

that the parties reached an agreement in principal during mediation, after which they took three to four months to finalize the terms of their agreement through extended discussion and the exchange of numerous drafts.  Furthermore, the Settlement Agreement provides the same relief to the class representatives and the unnamed class members, and it affects similarly situated class members in the same fashion.  Additionally, the Settlement Agreement limits Plaintiffs' counsels' attorneys' fees and costs to $200,000, which encompasses their work on both the instant case and the related litigation in the Western District of Pennsylvania.  Notably, the parties reached the agreement on attorneys' fees after reaching a separate and independent agreement on the merits.  Hurt Decl. ¶ 8, ECF No. 311.

As a result, the Court concludes that the Settlement Agreement is non-collusive and was reached in good faith.  This factor thus weighs in favor of approving the Settlement Agreement.

### F. Objections Raised by the Class Members

In considering a class action settlement, the Court should look to the reaction of the class members.  *In re Broadwing*, 252 F.R.D. at 376.  "Of course, '[t]he fact that some class members object to the settlement does not by itself prevent the court from approving the agreement.'"  *Id.* (citation omitted).  "Rather, '[t]he small number of objectors is a good indication of the fairness of the

settlement.'" *Id.* (citation omitted).  A settlement is "presumptively reasonable" once preliminary approval is entered, and "[a]n individual who objects, consequently, has a heavy burden of demonstrating that the [settlement] is unreasonable." *Bronson v. Bd. of Educ.*, 604 F. Supp. 68, 71–72 (S.D. Ohio 1984) (citations omitted).

Here, Axiall issued individual notices by first class mail to all Settlement Class members, informing them that objections to the settlement must be filed on or before June 22, 2015.  There were no objections.  The Settlement Class reaction therefore indicates the Settlement Class supports the Settlement Agreement.

### G. Public Interest

Public interest favors approval of the Settlement Agreement.  *In re Broadwing*, 252 F.R.D. at 376.  There is certainly a public interest in the settlement of disputed cases that require substantial federal judicial resources to supervise and resolve.  *See id.*  In the instant case, the Settlement Agreement ends potentially long and protracted litigation and frees the Court's valuable judicial resources.  This interest is especially strong in this case where, given the age of many of the plaintiffs, about one-third of them have died since this dispute arose.  Accordingly, the Court finds the public interest is served by resolution of

this action and concludes that this factor weighs in favor of approving the Settlement Agreement.

In sum, the aforementioned factors weigh in favor of approving the Settlement Agreement, and the Court finds the Settlement Agreement to be fair, reasonable, and adequate. Having done so, the Court proceeds to the issue of class certification.

## II. Class Certification

The benefits of a settlement can be realized only through the final certification of a settlement class. As shown below, the proposed Settlement Class satisfies the requirements of Federal Rues of Civil Procedure 23(a) and 23(b).

### A. Rule 23(a)

The four requirements of Rule 23(a)—numerosity, commonality, typicality and adequacy—are well recognized and defined by the courts. *In re Broadwing*, 252 F.R.D. at 376. As demonstrated below, these four requirements are satisfied by the Settlement Class in this action.

### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requirement is not amenable to a strict numerical test. *In re Broadwing*, 252 F.R.D. at 376. Rather,

the Court must examine this factor in light of the specific facts of the case. *Id.* Nonetheless, common sense dictates that at some point, numbers alone will satisfy the numerosity requirement. *Id.*

There are more than 1,600 individuals in the Axiall Settlement Class. Therefore, there is no question that the class is so numerous that joinder of all members would be impracticable, and the Court finds that Rule 23(a)(1) is satisfied.

### 2. Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The United States Supreme Court has stated that a litigant must show that the common question or questions can "generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The common question "must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

"Not every common question satisfies the commonality requirement; at some point of generality and abstraction almost any set of claims exhibits commonality." *In re Broadwing*, 252 F.R.D. at 377 (citation omitted). Rather, to

satisfy Rule 23(a)(2), the case must present a common issue the resolution of which will advance the litigation.  *Id.*

Here, the Settlement Class claims involve a common question capable of class-wide resolution: whether PPG and Axiall were entitled to unilaterally reduce or eliminate retiree medical benefits at the expiration of the collective bargaining agreement in effect when an employee retired.

Because common questions of law and fact are present, Rule 23(a)(2) is satisfied as to the Settlement Class.

### 3.  Typicality

Under Rule 23(a)(3), "the claims or defenses of the representative parties [shall be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to the class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.

*In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (quoting Newberg, § 3-13 at 3-76 (footnote omitted)).  "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class."  *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).

Differing degrees of injury among class members does not necessarily defeat typicality if the basic injury each class member asserts is the same. *In re Broadwing*, 252 F.R.D. at 377 (citations omitted). Likewise, typicality may be found even if different defenses may apply to some class members. *Id.*

Here, the class representatives' claims arise from the same course of conduct and are predicated on the same legal theories as the claims of the Settlement Class. Specifically, Axiall reduced the collectively bargained healthcare benefits of all Settlement Class members the same way. Therefore, Rule 23(a)(3) is satisfied as to the Settlement Class.

### 4. Adequacy of Representation

Rule 23(a)(4) requires "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Due process demands this inasmuch as a final judgment will bind all class members. *In re Broadwing*, 252 F.R.D. at 378.

To establish adequacy of representation, plaintiffs must satisfy two elements. First, the representatives must have interests common with the unnamed members of the class. *In re Broadwing*, 252 F.R.D. at 378. Second, it must be shown that the representatives—through qualified counsel—will vigorously prosecute the interests of the class. *Id.*

Here, the first element is satisfied.  The class representatives and Settlement Class members have been subjected to the same alleged misconduct and each has the same interest in achieving the best possible result.  Thus, no antagonism exists between the objectives of the class representatives and Settlement Class members.

The second element is satisfied as well.  There is no doubt that Plaintiffs' counsel is qualified to aid the representatives in prosecuting the interests of the class.  In 2007, attorneys Edward Feinstein, Ellen Doyle, and William Payne founded Feinstein Doyle Payne & Kravec, LLC ("FDPK"), a plaintiff-focused law firm specializing in ERISA, consumer, and insurance class actions.  FDPK Summary and History 1, Ex. 1, ECF. No. 311-1.  Partner Joseph N. Kravec, Jr. joined the firm in 2010.  *Id.*  All of the above-named attorneys have been practicing law for several years and have handled a significant number of complex class action suits.  *Id.* at 11–15.  Mr. Feinstein has practiced law since 1973, concentrating on ERISA class action claims since 1986.  *Id.*  Ms. Doyle has practiced law since 1975, litigating various complex class action suits in federal and state court since 1982.  *Id.*  Mr. Payne has practiced law since 1979, serving as counsel for retirees or employees in over one hundred class action suits—many of which involved company-provided retiree health benefits.  *Id.*  Mr.

Kravec, Jr. has practiced law since 1993 and has been involved in primarily class action practice since that time. *Id.*

Moreover, the record indicates Plaintiffs' counsel vigorously and effectively pursued the interests of the Settlement Class. The parties have reached a settlement after litigating against PPG since 2005 and against Axiall since 2013. Additionally, the Settlement Agreement is not tainted by unduly disparate treatment between the class representatives and absent Settlement Class Members, as the class representatives will receive medical benefits that are not disproportionate to the Settlement Class benefit. The Settlement Agreement allocates payments according to the Medicare-eligible status of each Settlement Class member, such that each similarly situated Settlement Class member receives equal benefits.

Therefore, Rule 23(a)(4) is satisfied as to the Settlement Class.

## B. Rule 23(b)

To be properly certified, a class action must not only satisfy each of the four requirements of Rule 23(a) but must also pass at least one of the tests set forth in Rule 23(b). Rule 23(b) provides:

A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

     (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

    (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

    (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

        (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

        (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

        (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

        (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

    Certification of the Settlement Class is appropriate under Rule 23(b)(1) and (2). Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Axiall, and Axiall has acted on grounds

that apply generally to the class—in modifying the benefit plans—such that final relief is appropriate respecting the class as a whole.

For the above reasons, the Court grants Plaintiffs' motion to approve the Settlement Class.  The Court hereby approves the maintenance of the action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1) & (2), with the Class being defined as follows:

> All persons who (i) are former hourly employees of PPG Industries, Inc. ("PPG") or Axiall Corporation (or, at separate times, PPG and Axiall Corporation) at the Natrium or Lake Charles Plants who retired prior to March 11, 2015, (ii) whose terms and conditions of employment were determined through collective bargaining between PPG or Axiall Corporation and the Chemical Workers or Machinists (or a predecessor union), and (iii) who have received, or were eligible to receive, medical and/or prescription drug benefits from Axiall Corporation at any time on or after January 28, 2013, through March 10, 2015, and all persons who are Spouses and/or Dependents[2] ("Settlement Class Members").

## III. Attorneys' Fees

Plaintiffs move for an award of attorneys' fees in the amount of $200,000 pursuant to the Settlement Agreement and Federal Rules of Civil Procedure 23(h) and 54(d).[3]  Plaintiffs submit that their actual fees amount to $257,942.75 and that their costs totaled $8,584.54.  Nevertheless, they seek only $200,000 in

---

[2] "Spouses" and "Dependents" have specific meanings set forth in the Settlement Agreement.

[3] In the alternative, Plaintiffs move for an award of fees pursuant to 29 U.S.C. § 1132(g)(1).  The Court need not consider Plaintiffs' request under § 1132(g)(1), however, as the parties agreed to the award as part of the Settlement Agreement.  *See* Fed. R. Civ. P. 23(e).

fees and costs pursuant to the Settlement Agreement. Settlement Agreement ¶ 11(a) ("Axiall Corporation shall not oppose a Fee Application by Class Counsel for an order requiring Axiall Corporation to pay Class Counsel's reasonable attorney fees and expenses . . . in an amount not to exceed $200,000."). Indeed, Axiall does not oppose Plaintiffs' request.

While the agreement between the parties supports approval of the fee award, the Court must still ensure that the award is reasonable and that class counsel is fairly compensated for the amount of work done and the results achieved. *See In re Broadwing*, 252 F.R.D. 369, 380 (S.D. Ohio 2006) (citation omitted). The core inquiry is whether an award is reasonable *under the circumstances*. *Id.* (emphasis added). "A reasonable fee is one that is adequate to attract competent counsel, but does not produce windfalls to attorneys." *Dowling v. Litton Loan Serv., LP*, No. 05–cv–98, 2008 WL 906042, at *1 (S.D. Ohio Mar. 31, 2008) (internal quotation marks and citation omitted).

To determine whether a requested fee award is reasonable, the Court calculates the "lodestar" amount. *Id*. "The lodestar is the number of hours reasonably expended on the case multiplied by the attorney's reasonable hourly rate." *Dowling*, 2008 WL 906042, at *1. "Where the party seeking the attorneys fees has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed to be the reasonable fee to which counsel

is entitled." *Hagy v. Demers & Adams, LLC*, No. 2:11–cv–530, 2013 WL 5728345, at *6 (S.D. Ohio Oct. 22, 2013) (internal citations and quotation marks omitted).  "Although there is a strong presumption that the lodestar figure represents a reasonable fee . . . this does not end the inquiry.  The Court has the discretion to adjust the award depending on a plaintiff's success, the complexity of the case, and the risk of recovery." *Dowling,* 2008 WL 906042, at *1 (internal citations and quotation marks omitted).

### A. Hourly Rate

For lodestar purposes, the Court determines an attorney's hourly rate using "the market rate for an attorney of comparable skill and experience in the community in which the plaintiff brought the complaint." *Id.* at *1 (citation omitted).  "In ascertaining the proper "community," district courts may look to national markets, an area of specialization, or any other market they believe is appropriate to fairly compensate attorneys in individual cases." *Lowther v. AK Steel Corp.*, No. 1:11–cv–877, 2012 WL 6676131, at *4 (S.D. Ohio Dec. 21, 2012) (internal quotation marks and citation omitted).  Absent any objection, the Court will look to the prevailing national market rates for attorneys involved in complex class action ERISA litigation with the amount of experience similar to that of Plaintiffs' counsel.

"Rates awarded in prior cases may be some evidence of what the market rate is, but they do not set the market rate." *Dowling v. Litton Loan Serv., LP*, 320 F. App'x 442, 447 (6th Cir. 2009) (citation omitted).  Because the market rate for attorneys varies, "the Court may look to other indicia of reasonableness, principally the attorney's customary billing rate." *Dowling,* 2008 WL 906042, at *1 (citation omitted).  For example, the Court may "'rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests.'"  *Hagy*, 2013 WL 5728345, at *13 (citation omitted).

Plaintiffs request the following hourly rates for each of their counsel:

Ellen M. Doyle: $625/hour

Joel R. Hurt: $495/hour

William T. Payne: $575/hour

McKean Evans: $275/hour

Timothy F. Cogan: $300/hour

Ruairi McDonnell: $240/hour

Pamina Ewing: $525/hour

Bryan Fox: $240/hour

Stephen M. Pincus: $525/hour

The Court finds each of these rates reasonable.  First, the rates are justified given the amount and nature of experience of respective counsel.  *See* Mot. Attys' Fees 14–15; Hurt Decl. ¶ 11, ECF No. 311; Hurt Decl., Ex. 1, ECF No. 311-1; Cogan Decl., Ex. A, ECF No. 312-1.  Second, counsels' award history supports their requested hourly rates.  *See* Hurt Decl., Ex. 2, ECF No. 311-2;

Hurt Decl. ¶ 12, ECF No. 311.  Finally, counsels' rates are consistent with rates

approved by this Court and other district courts in the Sixth Circuit in comparable

cases.  *See Lowther*, 2012 WL 6676131, at *5; *Bailey v. AK Steel Corp.*, 2008

WL 553764, at *3.[4]  Accordingly, the Court approves the above listed hourly

rates.

### B. Number of Compensable Hours

Having established the reasonable hourly rate, the Court now turns to the

number of compensable hours.  The Court only awards fees for hours reasonably

expended.  *Dowling,* 2008 WL 906042, at *2 (citation omitted).  That is,

"[p]laintiffs' attorneys should not recover for hours that are excessive, redundant,

or otherwise unnecessary."  *Id.* (internal quotation marks and citation omitted).

To determine whether hours expended are reasonable, the Court looks to

"'whether a reasonable attorney would have believed the work to be reasonably

expended in pursuit of success at the point in time when the work was

performed.'"  *Id.* at *3 (citation omitted).

> The fee applicant bears the burden of establishing entitlement to an
> award and documenting the appropriate hours expended. If a
> claimant clears this hurdle, the burden shifts to the adverse party to
> demonstrate that a particular entry represents frivolous work.  Once
> a plaintiff proffers an itemized and detailed bill, it is well-established

---

[4] The Court notes that the rates awarded to lead counsel in the cases cited by Plaintiffs
are lower than the rates sought for lead counsel in this case.  Nevertheless, given lead
counsels' breadth of experience, the nature of the case, the fact that the fee award was
negotiated, and the fact that counsel expended more than the negotiated award
amount, the Court finds these slightly higher rates supportable in this instance.

that conclusory allegations that the hours are excessive and that counsel employed poor billing judgment do not suffice to undermine it.

*Id.* at *3–4 (internal citations omitted).

Plaintiffs submit that counsel expended 570.18 total hours litigating this case, not including the additional time expended completing their brief in support of Axiall's motion for final approval of the Settlement Agreement, responding to inquiries from Settlement Class members, appearing at the fairness hearing, and other tasks involved in facilitating the Settlement Agreement.  A review of counsels' detailed timesheets indicates that these hours were reasonably expended in pursuit of Plaintiffs' claims.  *See* Timesheets, ECF Nos. 311-3, 311-4, 312-2.

### 3. Lodestar Calculation

Having determined that the hourly rate and hours expended are reasonable, the Court makes the following lodestar calculations.

| | | |
|---|---|---|
| Timothy Cogan | 110 hours x $300/hour = | $33,000 |
| Ellen Doyle | 98.15 hours x $625/hour = | $61,343.75 |
| McKean Evans | 2.5 hours x $275/hour = | $687.50 |
| Pamina Ewing | 52.93 hours x $525/hour = | $27,788.25 |
| Bryan Fox | 31.25 hours x $240/hour = | $7,500 |
| Joel Hurt | 181.65 hours x $495/hour = | $89,916.75 |

| Ruairi McDonnell | 47.6 hours x $240/hour = | $11,424 |
| William Payne | 41.6 hours x $575/hour = | $23,920 |
| Stephen Pincus | 4.5 hours x $525/hour = | $2,362.50 |
| Total: | 570.18 hours | $257,942.75 |

## B. Costs and Expenses

Plaintiffs submit that counsel incurred $8,584.54 in recoverable costs and expenses. *See* Hurt Decl. Ex. 5, ECF No. 311-5; Cogan Decl. ¶ 6, ECF No. 312. Plaintiffs do not seek reimbursement of these costs, however, as their lodestar amount already exceeds the $200,000 limit agreed to in the Settlement Agreement.

## C. Award

Although the lodestar amount totals $257,942.75, Plaintiffs seek only $200,000 in accordance with the Settlement Agreement. The fact that the parties reached their agreement as to the amount of fees independent of and subsequent to Axiall's settlement with the Settlement Class supports approval of the award. *See* Hurt Decl. ¶ 8, ECF No. 311; *Bailey*, 2008 WL 553764, at *1 ("Negotiated and agreed-upon attorneys fees as part of a class-action settlement are encouraged . . . . [C]ourts are especially amenable to awarding negotiated attorneys fees and expenses in a reasonable amount where that amount is in addition to and separate from the defendant's settlement with the class.")

(citations omitted). Furthermore, the award represents a twenty-five percent discount of counsels' normal fees, excludes about $8,000 in costs and expense, and does not account for additional hours expended by counsel after the filing of its motion for fees. For all of these reasons, as well as those outlined above, the Court finds Plaintiffs' request for fees reasonable.

## IV. CONCLUSION

The Court hereby grants final approval of the Settlement Agreement in this case.

Based on the above, and the Settlement Agreement, the Court **ORDERS, ADJUDGES AND DECREES** as follows:

1. The Court has jurisdiction over the subject matter of this action and the Class Representatives, the Class Members, and Defendants.

2. The Court **GRANTS** Plaintiffs' Motion for Certification of Proposed Axiall Settlement Class, ECF No. 263, **GRANTS** Axiall's Motion for Final Approval of Class Action Settlement, ECF No. 302, and **APPROVES** the Settlement Agreement. The Settlement Agreement shall be consummated and implemented in accordance with its terms and conditions and will be binding on Axiall and the Settlement Class members.

3. The Court finally appoints and approves as Plaintiffs' Counsel for the Settlement Class Feinstein Doyle Payne & Kravec, LLC and Cassidy Cogan

Shapell and Voegelin, LC.  Based on the proceedings in this matter to date and the documents on file with the Court, the Court concludes that Plaintiffs' Counsel has and will represent the Settlement Class fairly and adequately.

      4. The Court finally appoints and approves Plaintiffs Patricia Amos, James Hutchison, and Terry Taylor as class representatives.  Based on the proceedings in this matter to date and the documents on file with the Court, the Court concludes that the class representatives have represented the Settlement Class fairly and adequately.

      5. This Court certifies the following Settlement Class for purposes of settlement under Federal Rule of Civil Procedure 23(a) and 23(b)(1)(A) and (b)(2):

> All persons who (i) are former hourly employees of PPG Industries, Inc. ("PPG") or Axiall Corporation (or, at separate times, PPG and Axiall Corporation) at the Natrium or Lake Charles Plants who retired prior to March 11, 2015, (ii) whose terms and conditions of employment were determined through collective bargaining between PPG or Axiall Corporation and the Chemical Workers or Machinists (or a predecessor union), and (iii) who have received, or were eligible to receive, medical and/or prescription drug benefits from Axiall Corporation at any time on or after January 28, 2013, through March 10, 2015, and all persons who are Spouses and/or Dependents ("Settlement Class Members").

      6. The Settlement Agreement and the terms of the settlement thereof, including releases of all claims, are in their entirety and all respects, fair, reasonable and adequate to the Settlement Class and in the best interests of the

Class.  The Settlement Agreement was arrived at as a result of arm's length negotiations conducted in good faith by the parties and sophisticated counsel. The settlement amount contemplated by the Settlement Agreement constitutes a common benefit to the Settlement Class which is meaningful, appropriate, and ascertainable.

7. Notice has been implemented according to the Settlement Agreement and the Preliminary Approval Order.  The Notice constitutes the best notice practicable under the circumstances and fully complies with and satisfies the notice requirements of Federal Rule of Civil Procedure 23, due process, the United States Constitution, and applicable law.  The Notice reasonably apprised the Settlement Class members of the nature and pendency of this lawsuit and the claims made herein; the class definitions; the material elements of the proposed settlement, the binding effect of the settlement; class members' right to object to the proposed settlement, along with information regarding the time and manner for doing so; the date, time, and location of the final fairness hearing; Settlement Class members' right to appear at the fairness hearing (including through an attorney) and speak regarding the proposed settlement; and the identity of Plaintiffs' counsel and how to contact them with any questions.  Full opportunity has been afforded to Settlement Class members to be heard at and

to participate in the fairness hearing.  Accordingly, the Court determines that the Settlement Class is bound by this Final Order and Entry.

8. The parties have complied with the requirements of the Class Action Fairness Act.

9. The Court hereby dismisses with prejudice all claims of Plaintiffs and the Settlement Class members that were raised or could have been raised against Axiall Corporation and/or Georgia Gulf Corporation.

10. The Court specifically approves the following release as set forth in Section 12 of the Settlement Agreement (capitalized terms have the meanings set forth in the Settlement Agreement):

> (a) As of the Effective Date, the Class Representatives and other Class Members and Class Counsel and anyone claiming on behalf of, through or under them by way of subrogation or otherwise shall conclusively, absolutely, unconditionally, irrevocably and forever release and discharge Axiall Released Parties from any and all rights, claims or causes of action that any Class Member and Class Counsel and anyone claiming on behalf of, through or under them by way of subrogation had, has or hereafter may have, whether known or unknown, suspected or unsuspected, concealed or hidden, arising out of or based upon or otherwise related to any entitlement

to retiree medical and/or prescription drug benefits, including but not limited to the claims arising, or which could have been raised, in a claim for arbitration under any collective bargaining agreement or in connection with the Litigation, vesting of retiree medical and/or prescription drug benefits and the entitlement of Axiall Corporation to modify or terminate the same, including but not limited to in respect of any changes made with respect to such benefits (other than for claims referred to in paragraph 12(g)) as well as any claims that this Settlement Agreement, any document referred to or contemplated herein or any action taken to carry out this Settlement Agreement is not in compliance with applicable laws and regulations, provided however, that in the event that the Settlement Agreement is terminated pursuant to Section 9, this release shall have no force or effect.  Class Representatives and other Class Members agree never to file a lawsuit or grievance against the Axiall Released Parties asserting any claim released in this Settlement Agreement. Without limiting the foregoing, Class Members expressly release the Axiall Released Parties from any and all claims for injunctive relief with regard to the future provision of retiree medical and/or prescription drug benefits (except as to the benefits provided under

this Settlement Agreement), regardless of the ultimate outcome of the Amos Case.

(b) As of the Effective Date, Axiall Corporation, Georgia Gulf and EBAC shall conclusively, absolutely, unconditionally, irrevocably and forever release and discharge the Class Representatives, the Settlement Class and Class Counsel from any and all claims relating to the institution and prosecution of the Amos Case or related to the Settlement of any of the claims released in this Section 12.

(c) Settlement Class Members do not release and may proceed as to any claims against PPG, including claims at issue against the PPG Defendants in the Amos Case (*see* Settlement § 12(d)).

11. The Court approves Axiall's payment of Class Counsel's reasonable attorney fees and expenses, as provided by Section 11 of the Settlement Agreement.

12. This Final Order and Judgment shall not be construed or used as an admission, concession or declaration of any fault, wrongdoing, breach or liability.

13. Subject to Sections 5 and 13 of the Settlement Agreement, the Court retains exclusive jurisdiction to resolve any disputes relating to or arising out of or in connection with the enforcement, interpretation or implementation of the Settlement Agreement.

14. In the event that (i) the Settlement Agreement is terminated pursuant to its terms, (ii) the Settlement Agreement, Preliminary Approval Order, and Final Order and Judgment do not for any reason become effective, or (iii) the Settlement Agreement, Preliminary Approval Order, or Final Order and Judgment are reversed, vacated, or modified in any material respect, then any and all orders entered pursuant to the Settlement Agreement, including this Final Order and Judgment, shall be deemed vacated.

15. Pursuant to Federal Rule of Civil Procedure 54(b), the Court determines that there is no just reason for delay.

The Clerk shall enter judgment in this case as follows:

> IT IS ORDERED AND ADJUDGED that the August 13, 2015 final Opinion and Order, ECF No. 320, is hereby incorporated and entered including, without limitation, approving the Settlement Agreement and Release and the class action settlement, certifying the Settlement Class, and granting disbursements to Class Members according to the Settlement Agreement and Release.

In light of this judgment, the Court denies as moot Axiall's motion to dismiss, ECF No. 172, Axiall's motion to sever, ECF No. 189, and Axiall's motion to modify the scheduling order, ECF No. 191. The Clerk shall terminate those motions, as well as ECF Nos. 263, 302, and 309.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**