UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Patricia L. Amos, *et al.,*

               Plaintiffs,                             Case No. 2:05–cv–70

               v.                                Judge Michael H. Watson
                                           Magistrate Judge Vascura

PPG Industries, Inc., *et al.,*

               Defendants.

## OPINION AND ORDER

Plaintiffs Patricia L. Amos, James S. Hutchinson, Sally Jones, George

Owens, Terry Taylor, John Foster, Alex Olszyk, John W. Zuzik, Arthur Ramoz,

Robert Ratleff, Richard Ross, Virginia Bakeman, William Brison, Mark B. Bryan,

Shirley M. Bryan, Richard Fischer, Lindsay T. Granger, and John P. Detty

("Plaintiffs") assert claims against Defendants PPG Industries, Inc., PPG

Industries Ohio, Inc. (collectively, "PPG"), PPG Retirement Plans (the "Plans"),

and John Does 1 through 20 (collectively, "Defendants")  for violations of Section

301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and

Sections 502(a)(1)(B) and (a)(3) of the Employee Retirement Income Security

Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3).  Plaintiffs bring this

action on behalf of themselves and a class of similarly-situated PPG retirees and

their spouses, surviving spouses, and dependents (collectively, "Putative Class

Members"), alleging that Defendants violated the LMRA and ERISA by

unilaterally modifying Putative Class Members' retiree medical benefits provided pursuant to collective bargaining agreements ("CBAs") negotiated by various labor unions on the Putative Class Members' behalf after the retiree medical benefits had already vested.

This matter is before the Court for consideration of Plaintiffs' Renewed Motion for Class Certification, ECF No. 378, and Plaintiffs George Owens' ("Owens") and Robert Ratleff's ("Ratleff") Motion for Certification of a Subclass of Delaware Retirees, ECF No. 379. The Motions have been fully briefed and are ripe for review. For the following reasons, both Motions are **GRANTED**.

## I. BACKGROUND

PPG operates a number of automotive and industrial coatings, glass, and chemical plants throughout the United States.

Plaintiffs are PPG retirees who worked for one of thirteen different PPG facilities located in Natrium, West Virginia; Fresno, California; Mt. Zion, Illinois; Lake Charles, Louisiana; Cumberland, Maryland; Crystal City, Missouri; Barberton, Circleville, and Delaware, Ohio; and Creighton, Ford City, Greensburg, and Springdale, Pennsylvania. During Plaintiffs' decades of service with PPG, they were represented by five different unions: International Chemical Workers Union Council of the United Food and Commercial Workers Union ("ICWUC"); International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"); United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers

International Union ("USW"); Allied Chemical & Alkali Workers of America, Local
#1 ("Alkali Workers"); and International Association of Machinists ("IAM")
(collectively, the "Unions").

The Unions engaged in collective bargaining with PPG to provide, *inter
alia*, retiree medical benefits for Plaintiffs and other Union-represented
employees of PPG.  The medical benefits were described in successive CBAs
that the parties typically renegotiated every three years.  Plaintiffs allege that as
early as 1969, the Unions negotiated the provision of lifetime comprehensive
health benefits programs for their member employees and retirees until they
became Medicare-eligible and beyond, terminating only upon their death.

Plaintiffs contend that, despite minor differences in each location's CBA,
the language purporting to provide lifetime retiree health benefits in those CBAs
was substantially the same.  For instance, the 1969 Creighton, Cumberland, Ford
City, and Crystal City CBA implemented the following provision:

> *Retirement*
>
> **If you retire under the Pension Agreement** or the Social Security
> Act, or upon the attainment of age 65, whichever shall occur sooner,
> the following provisions will be applicable to your coverage under the
> program: . . . (c) Blue Cross and Blue Shield Benefits—Such
> **coverage will be continued in effect thereafter**, without cost to
> you, in accordance with paragraph 7.5.[1]

1969 Creighton, Cumberland, Ford City, and Crystal City CBA, Ex. 2, PAGEID
## 14558–59, ECF No. 378-4 (emphasis added).  Identical or nearly identical

---

[1] Paragraph 7.5 provides for a reduction in benefits for Medicare-eligible employees. *Id.*
at PAGEID # 14555.

language indicating that, at the time of an employee's retirement "under the
Pension Agreement," medical benefits "will" or "shall be continued" or "will be
continued in effect thereafter" (with exceptions once retirees become Medicare
eligible), appears in the CBAs at each relevant facility. *See* 1969 Fresno CBA,
Ex. 5, PAGEID # 15209, ECF No. 378-12; 1970 Springdale CBA, Ex. 6, PAGEID
# 15450, ECF No. 378-13; 1972 Greensburg CBA, Ex. 3, PAGEID ## 15–16,
ECF No. 378-8; 1972 Mt. Zion CBA, Ex. 4, PAGEID # 14783, ECF No. 378-7;
1978 Barberton CBA, Ex. 7, PAGEID ## 15634–35, ECF No. 378-14; 1975 Lake
Charles CBA, Ex. 8, PAGEID # 15753, ECF No. 378-15; 1976 Circleville CBA,
Ex. 10, PAGEID # 16046, ECF No. 378-17; 1977 Natrium CBA, Ex. 9, PAGEID
# 15906, ECF No. 378-16; 1986 Delaware CBA, Ex. 11, PAGEID ## 16184–85,
ECF No. 378-19.

Language extending retirement health coverage to a PPG retiree's
surviving spouse until the spouse's death or remarriage and to the retiree's
eligible dependents for the period of dependency is also substantially the same in
each relevant CBA. *See* 1972 Creighton, Cumberland, Ford City, and Crystal
City CBA, Ex. 2, PAGEID # 14563, ECF No. 378-4; 1972 Greensburg CBA, Ex.
3, PAGEID # 14870, ECF No. 378-8; 1972 Mt. Zion CBA, Ex. 4, PAGEID #
15019 , ECF No. 378-9; 1972 Fresno CBA, Ex. 5, PAGEID # 15214, ECF No.
378-12; 1975 Springdale CBA, Ex. 6, PAGEID # 15459, ECF No. 378-13; 1976
Circleville CBA, Ex. 10, PAGEID # 16047, ECF No. 378-17; 1986 Delaware CBA,
Ex. 11, PAGEID # 16185, ECF No. 378-19; 1987 Lake Charles CBA, Ex. 8,

PAGEID # 15770, ECF No. 378-15; 1990 Natrium CBA, Ex. 9, PAGEID # 15937, ECF No. 378-16; 1990 Barberton CBA, Ex. 7, PAGEID # 15648, ECF No. 378-14.

Plaintiffs allege that the above language evinces the parties' intention that those benefits would vest, thus remaining in effect without modification or termination throughout the length of Plaintiffs' retirement. Indeed, from 1969 to mid-2001, Plaintiffs assert that Union-represented employees continued to receive throughout their retirement the health benefits and required premium contribution levels specified in the CBAs in place at the time of their retirement.

Nevertheless, Plaintiffs contend, PPG violated Plaintiffs' vested right to retiree medical benefits by unilaterally changing the CBAs to shift part of the cost of medical coverage from PPG to the retirees. Specifically, PPG announced in a January 2001 letter that PPG was imposing higher premium costs on Putative Class Members, which costs would be "shared between PPG and retirees annually on a 50/50 basis . . . ." 2001 Letter, Ex. 33, ECF No. 378-41.

Later, PPG instituted another change to retiree health benefits: effective January 1, 2017, PPG terminated the retiree health benefits it had previously sponsored for Medicare-eligible retirees and eliminated the option for those individuals to pay in order to maintain eligibility for PPG-sponsored health benefits. PPG replaced those benefits with a Health Reimbursement Arrangement ("HRA") whereby it contributes $125 a month to Medicare-eligible retirees to be used to purchase substitute health coverage available through

Towers Watson's OneExchange marketplace.  If Medicare-eligible retirees did not enroll via OneExchange, they would not be eligible for the PPG-funded HRA in 2017.

Plaintiffs filed this suit seeking a declaration that PPG cannot unilaterally terminate or modify PPG retiree health benefits and to permanently enjoin PPG from modifying those benefits.  Plaintiffs also seek an award of retiree health insurance benefits pursuant to the terms of the relevant CBAs and/or monetary damages or restitution.

Plaintiffs now move for certification of this action as a class action and aver that this action should proceed as a single class pursuant to Rule 23(b)(1)(A) or Rule 23(b)(2).  ECF No. 378.  Alternatively, Plaintiffs assert that the action may proceed as a class comprised of subclasses under Rule 23(b)(2).  *Id.*  Finally, Plaintiffs Owens and Ratliff move for certification of a subclass of retirees who were employed by PPG at its Delaware, Ohio, facility, who were represented by the same union (UAW), and who retired from the Delaware facility during a specific time period.  ECF No. 379.  The Court addresses each motion in turn.

## II.    STANDARD OF REVIEW

The "class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Glazer v. Whirlpool*, 722 F.3d 838, 850 (6th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)).  To obtain class certification, Plaintiffs must show that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "These four requirements—numerosity, commonality, typicality, and adequate representation—serve to limit class claims to those that are fairly encompassed within the claims of the named plaintiffs because class representatives must share the same interests and injury as the class members." *Whirlpool*, 722 F.3d at 850 (citing *Dukes*, 564 U.S. at 2550). Finally, although not specified in Rule 23(a) itself, the four enumerated requirements lead to a fifth, common sense requirement that the class members be "ascertainable." *See McGee v. E. Ohio Gas Co.*, 200 F.R.D. 382, 387 (S.D. Ohio 2001) (noting that a plaintiff must define "the class such that a court can ascertain its membership in some objective manner").

In addition to fulfilling the prerequisites of Rule 23(a), "the proposed class must also meet at least one of the three requirements listed in Rule 23(b)." *Id.* Here, Plaintiffs move for class certification pursuant to Rules 23(b)(1)(A) and 23(b)(2). These sections respectively allow for class certification if prosecuting actions separately may yield inconsistent results and incompatible standards of conduct for Defendants or if Defendants have acted or refused to act on grounds that apply to the class as a whole such that injunctive or declaratory relief is appropriate with respect to the class as a whole.

"A district court has broad discretion to decide whether to certify a class,"

and "[c]lass certification is appropriate if the court finds, after conducting a

'rigorous analysis,' that the requirements of Rule 23 have been met." *Id.* at 850–

51. As the United States Court of Appeals for the Sixth Circuit has explained,

> Ordinarily, this means that the class determination should be
> predicated on evidence presented by the parties concerning the
> maintainability of the class action. *In re Am. Med. Sys. Inc.*, 75 F.3d
> 1069, 1079 (6th Cir. 1996). On occasion "it may be necessary for
> the court to probe behind the pleadings before coming to rest on the
> certification question," *Gen. Tele. Co. of Sw. v. Falcon*, 457 U.S.
> 147, 160 (1982), and "rigorous analysis" may involve some overlap
> between the proof necessary for class certification and the proof
> required to establish the merits of the plaintiffs' underlying claims.

*Whirlpool*, 722 F.3d at 851. Therefore, "[m]erits questions may be considered to

the extent—but only to the extent—that they are relevant to determining whether

the Rule 23 prerequisites for class certification are satisfied." *Id.* (quoting *Amgen*

*Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013)). "The party

seeking the class certification bears the burden of proof" that the prerequisites to

certification are met. *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079.

"When appropriate," the Court may divide a class into subclasses. Fed. R.

Civ. P. 23(c)(5). "If each subclass meets Rule 23's requirements, the matter may

proceed in a consolidated action even if the matter could not have been certified

as a single, all-inclusive class under the rule." *Buus v. WAMU Pension Plan*, 251

F.R.D. 578, 581 (W.D. Wash. 2008) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S.

815, 856 (1999)).

## III.  ANALYSIS

### A. Certification of Plaintiffs' Proposed Class

Plaintiffs seek certification of the following proposed class:

All collectively bargained past, present, and future retirees of PPG (as well as the spouses, surviving spouses, and eligible dependents of these retirees) who:

(1) while employed by PPG, were represented by the USW, the UAW, the IAM, the Alkali Workers, or the ICWUC (the "Unions")

(2) were eligible for retiree medical coverage pursuant to the terms of collectively bargained agreements and provisions between any Union and PPG; and

(3) retired from, or before final judgment in this litigation will retire from, the following PPG facilities, on or after the dates indicated: Barberton (3/1/90); Circleville (10/1/86); Creighton (2/16/84); Crystal City (2/16/84); Cumberland (2/16/84); Delaware (2/16/86); Ford City (2/16/84); Fresno (5/16/84); Greensburg (3/25/84); Lake Charles (5/15/87); Mt. Zion (6/15/84); Natrium (3/1/87); and Springdale (11/1/84)

as well as surviving spouses of active employees who have died before final judgment in this litigation and who at the time of such employees' death worked at one of the listed facilities (on or after the dates indicated), were represented by a Union, and were eligible to retire under the pension plan or with a Social Security benefit, making their spouse eligible for retiree medical coverage pursuant to the terms of collectively bargained agreements and provisions between any Union and PPG.

Specifically excluded from the Class are employees who were hired after the dates that PPG and the Unions negotiated that persons hired at those facilities after those dates were not entitled to retiree health benefits under an ERISA governed plan (plus their spouses and beneficiaries) if they subsequently retired.

Mot. ii–iii, ECF No. 378.

As set forth below, the Court finds that Plaintiffs' proposed Rule 23(b)(1)(A) and (b)(2) class definition satisfies each of the requirements for class certification.

## 1. Ascertaining Members of the Proposed Class

As an initial matter, the Court addresses Defendants' averment that inconsistencies between the proposed class as pleaded in Plaintiffs' Seventh Amended Complaint and as defined in Plaintiffs' Motion for Class Certification make it impossible to ascertain the members of the class. Resp. 7–8, ECF No. 383. The purported inconsistency arises from Plaintiffs' allegation in the Seventh Amended Complaint that CBAs "in effect between 2001 and the present specify retiree cost sharing and benefit levels equal to the cost sharing and benefit in effect before PPG made the unilateral changes in 2001 that precipitated this litigation." Seventh Am. Compl. ¶ 52, ECF No. 375. Defendants assert that this allegation should limit the proposed class temporally to retirees who retired under CBAs in effect between 2001 and the present; however, the proposed class definition includes individuals retiring as long ago as 1984. Defendants assert that this inconsistency makes it impossible to identify all Putative Class Members and that it is grounds in and of itself for rejecting Plaintiffs' request for class certification.

An implied prerequisite to class certification pursuant to Federal Rule of Civil Procedure 23 is the existence of an ascertainable class of persons. *See Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009)

(citations omitted).  Accordingly, the Court's rigorous review of Plaintiffs' Motion for Class Certification must include close scrutiny of the proposed class definition.

The Court rejects Defendants' argument as a mischaracterization of Plaintiffs' proposed class definition and class claims.  The crux of Plaintiffs' claims is that Putative Class Members' retiree health benefits were vested prior to PPG's changes to their health plans in 2001.  Because the benefits were vested, according to Plaintiffs' theory of the case, the CBAs of individuals who retired prior to 2001 were still "in effect" in 2001 and after, when PPG modified the health benefits purportedly in violation of those CBAs.  Moreover, the class definition expressly excludes individuals hired after dates that the CBAs indicate would make them ineligible for retiree health benefits under an ERISA-governed plan.   *See* Mot. ii, ECF No. 378 ("Specifically excluded from the Class are employees who were hired after the dates that PPG and the Unions negotiated that persons hired at those facilities after those dates were not entitled to retiree health benefits under an ERISA governed plan (plus their spouses and beneficiaries) if they subsequently retired.").  Plaintiffs' proposed class definition thus sets clear parameters that allow the Court to ascertain all Putative Class Members.

### 2.  Numerosity

"The element of numerosity requires that the class be 'so numerous that joinder of all members is impracticable.'"  *McGee v. E. Ohio Gas Co.*, 200 F.R.D.

382, 389 (S.D. Ohio 2001) (quoting Fed. R. Civ. P. 23(a)(1)). "Determining the impracticability of joinder does not require adherence to a strict numerical formula." *Id.*; *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980) (finding that "the numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations").

Here, the proposed class is composed of approximately 6,033 individuals. Hurt Decl. ¶ 3, ECF No. 386-1. This number is sufficient to satisfy Rule 23's numerosity requirement. *See, e.g.*, *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 288 (N.D. Ohio 2007) (finding the numerosity requirement satisfied when the class definition encompassed forty individuals); *Kelly v. Montgomery Lynch & Assocs., Inc.*, No. 1:07-CV-919, 2007 WL 4562913, at *3 (N.D. Ohio Dec. 19, 2007) (finding fifty class members would be sufficient to satisfy the numerosity requirement). Defendant does not argue otherwise. *See* Resp., ECF No. 383. Plaintiffs have thus satisfied the first factor of Rule 23(a).

### 3. Commonality

To demonstrate commonality under Rule 23(a)(2), Plaintiff must show that class members have all suffered the same injury. *Dukes*, 564 U.S. at 2551. "Their claims must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* This inquiry focuses on whether a class action will generate common answers that are likely to drive resolution of the lawsuit. *Id.* "Not every

common question satisfies the commonality requirement; at some point of generality and abstraction almost any set of claims exhibits commonality." *In re Broadwing, Inc. v. ERISA Litig.*, 252 F.R.D. 369, 377 (S.D. Ohio 2006) (citation omitted). Instead, to satisfy Rule 23(a)(2), the case must present a common issue the resolution of which will advance the litigation. *Id.* Still, "[t]he interests and claims of the various plaintiffs need not be identical. Rather, the commonality test is met when there is *at least one issue* whose resolution will affect all or a significant number of the putative class members." *Reese v. CNH Amer., LLC*, 227 F.R.D. 483, 487 (E.D. Mich. 2005) (emphasis added) (quoting *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998)).

The Court finds that the requirement of commonality is met in this case.

First, Plaintiffs' claims involve a common question capable of class-wide resolution—namely, whether Putative Class Members' retiree health benefits as defined in the applicable CBAs were vested and therefore "meant to last, unaltered, throughout retirement." Seventh Am. Compl. ¶ 44, ECF No. 293. This common question makes appropriate the classwide resolution of Plaintiffs' claims. *See Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997) ("In the instant case, each class member claims that the original collective bargaining agreement guaranteed them lifetime, fully-funded benefits. This common question is all that is required under [Rule 23].").

Defendants raise many arguments against a finding of commonality, all of which miss the mark. First, Defendants contend that because the Court must

interpret the CBAs "according to ordinary principles of contract law" (that is, by determining the intent of the parties), *M&G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015), determining whether the parties intended the health benefits to be provided throughout retirement will require many individualized inquiries surrounding the circumstances of each negotiated CBA, with each Putative Class Member's claim having no bearing on another Member's claim. Defendants emphasize that the CBAs at issue here were negotiated by multiple unions, over several years, by different individual negotiators, and at numerous facilities.

But Defendants make too much of the effect of these distinctions among Putative Class Members and the relevant CBAs on the overarching common question in this case. This case is distinct from those cited by Defendants, in which courts have denied class certification based on a lack of commonality due to the individualized nature of the plaintiffs' claims. The claims of the plaintiffs in *Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998), for example, unlike Plaintiffs' claims here, did not arise from the existence of common CBAs whose *terms* the plaintiffs asserted granted them vested retirement health benefits. Instead, the *Sprague* plaintiffs' claims arose from their alleged *reliance* on a number of individualized representations the employer allegedly made to each particular employee about the permanent nature of that employee's retirement health benefits. Other cases on which Defendants rely are premised on the same reliance-based claims. *See, e.g., Walther v. Pension Plan for Salaried*

*Employees of Dayton-Walther Corp.*, 880 F. Supp. 1170, 1178 (S.D. Ohio 1994) (finding a lack of commonality between the class members' claims to vested retiree health benefits because there was no written document alleged to have provided such benefits to the retirees, and the claims hinged on each retirees' reliance on separate oral and/or written representations from the employer).

In this case, however, Plaintiffs do not claim that their reliance on PPG's individualized representations regarding the ongoing nature of their retiree health benefits created a vested right to receive lifetime health benefits; instead, Plaintiffs allege that a vested right was created by the express language of the CBAs. As such, Plaintiffs' case is more analogous to the many cases in which courts have found the commonality requirement met because the language giving rise to the plaintiffs' claims, although contained in multiple CBAs negotiated by different unions at various plant locations, was the same or substantially similar. *See Office and Prof.l Employees Int'l Union, Local 494 v. Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Amer.*, 311 F.R.D. 447, 449–50, 455 (E.D. Mich. 2015) (finding the commonality requirement met even though the class members' health benefits were set forth in different CBAs negotiated by several different unions); *Sheick v. Auto. Component Carrier, LLC*, No. 09-14429, 2010 WL 3070130, at *2 (E.D. Mich. Aug. 2, 2010) (finding commonality met despite the existence of multiple CBAs and stating that "[f]ederal courts considering commonality have held that it does not matter that proposed Class Members retired in different years or under different agreements"

(citing cases)), and *Ames v. Robert Bosch Corp.*, No. 1:07-cv-03426, 2009 WL 803587, \*4 (N.D. Ohio Mar. 24, 2009) (finding that the existence of a "number of different contracts governing the claims of the retirees" did not destroy commonality, because, "[r]egardless of the different language of the individual plans, the promise of unchanged health benefits is common to all the class members."). Just as those distinctions between plaintiffs did not preclude a commonality finding in those cases, neither do they preclude such a finding here.

Defendants additionally assert that there is no commonality here because PPG began negotiating or including without protest "general durational provision"[2] language in its CBAs in various years, beginning as early as 1984. The general durational language states:

> The Company will continue the benefits described herein for active and retired employees consistent with the terms and conditions of the labor agreement for the duration of such agreement. The insurance carrier or carriers reserve the right to terminate their provisions of such plans of insurance as of any policy anniversary date. In the event of such termination of coverage by the carrier, the Company will provide the benefits as outlined in the labor agreement. In the event of termination of the labor agreement, you have the same rights as to claim submission and review and conversion rights as you would have under individual termination of coverage. These rights are shown in the applicable sections of this booklet.

*See, e.g.*, Ex. 2-1, ECF No. 384-2, 1990 Barberton CBA, PAGEID # 16891.

Defendants raise this issue without explaining how it destroys commonality.

---

[2] Plaintiffs refer to these provisions as "general durational provisions" while Defendants refer to them as "reservation of rights provisions." The Court will refer to them as "general durational provisions" throughout this Opinion and Order.

In fact, it is difficult to understand how PPG's act of incorporating such language in its CBAs destroys commonality, because all of the CBAs at issue in this case contain that same language. Indeed, Plaintiff asserts (and PPG does not contest) that when PPG modified Putative Class Members' benefits beginning in 2001, it did so ostensibly in reliance on the general durational provisions in the CBAs applicable to those retires. In other words, PPG modified the retiree health benefits of only those retirees whose CBA included a general durational provision at the time of their retirement. For this reason, Plaintiffs' proposed class definition includes only those retirees whose CBA contained such a provision.

Indeed, Plaintiffs specifically allege that the general durational provisions are subordinate to the "specific durational provisions" contained in each CBA, which state that: (i) health care benefits would continue unchanged until the attainment of Medicare eligibility, (ii) benefits would continue unchanged for a retiree's spouse until the spouse's death or remarriage, and (iii) benefits would continue unchanged through the period of a dependent's dependency. The CBAs at issue here, as already discussed above, include virtually identical language defining continuing eligibility for retiree health benefits. The meaning of that common language will drive resolution of the lawsuit, making Plaintiffs' claims common to the entire Putative Class. The Court fails to see how the existence of the general durational provisions destroys commonality—if the

general durational provisions defeat Plaintiffs' claims (as Defendants allege),
their claims will fall together.

In a final unsuccessful attempt to obscure the commonality issue,
Defendants contend that PPG's announcement in 1992 that it would impose caps
on the amount it would pay for healthcare retirees, and PPG's subsequent
negotiation of non-uniform cap provisions in various CBAs for different facilities in
different years (as well as the exclusion of cap language in CBAs applicable to
employees of PPG's Delaware and Circleville facilities), precludes a finding of
commonality in this case. However, because PPG never implemented these
caps, and indeed introduced the 2001 health care changes at issue here as an
alternative to these caps, *see* PPG Letter, ECF No. 378-41, PAGEID # 16596,
the inclusion of cap language is apparently irrelevant to the resolution of
Plaintiffs' claims. If, however, such language does in fact become relevant over
the course of this litigation, the Court is free at that time to define subclasses
based on the cap provisions if it finds such division of classes necessary. *See,
e.g.*, *Reese*, 227 F.R.D. at 488; *Ginter v. Whirlpool Corp.*, No. 1:08-cv-750, 2009
WL 198746, at *6 (W.D. Mich. Jan. 23, 2009).

For the foregoing reasons, the Rule 23 commonality requirements are
satisfied.

### 4. Typicality

Typicality under Rule 23(a)(3) is met if the class members' claims are
"fairly encompassed by the named plaintiffs' claims." *Sprague v. Gen. Motors*

*Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (en banc) (quotation marks omitted). "This requirement insures that the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." *Whirlpool*, 722 F.3d at 852–53.

"The[] two concepts of commonality and typicality 'tend to merge' in practice because both of them 'serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Id.* (quoting *Dukes,* 564 U.S. at 2551 n.5).

The Court finds that Plaintiffs' claims are typical of all Putative Class Members' claims because the claims arise from the same course of conduct, namely, Defendants' alleged unilateral modification and/or termination of Putative Class Members' retiree benefits, which Plaintiffs allege were vested benefits. *See, e.g.*, *Ginter*, 2009 WL 198746, at *7.

Defendants assert that typicality is lacking with respect to seven Plaintiffs, however, because those Plaintiffs' claims are barred by issue preclusion. Defendants point to a Third Circuit case that was decided during the pendency of this lawsuit: *International Chemical Workers Union Council v. PPG Industries, Inc.*, 236 F. App'x 789 (3d Cir. 2007). In that case, three PPG unions, on behalf of "employees of PPG," claimed that PPG was obligated to arbitrate the issue of

whether PPG could reduce or modify employee retiree benefits. *Id.* at 791. The court found that PPG was not required to arbitrate, because, according to the unambiguous language of the CBA agreements, the employees' health benefits were not vested; therefore, PPG could lawfully modify or reduce those benefits unilaterally. *Id.* at 792–94.

Seven of the Plaintiffs in this case are members of one of the three unions that brought the claims in the Third Circuit case. Defendants argue that because the Third Circuit already found that benefits provided under the CBAs applicable to those Plaintiffs were not vested, their vesting claims in this suit are barred by issue preclusion. Defendants' arguments in support of their position, however, are not on point. In their brief, Defendants cite many cases for the proposition that the terms of a CBA reached by a union with an employer are binding on the employees represented by that union. *See* Resp. 28–29, ECF No. 383. But the relevant inquiry with respect to Defendants' issue-preclusion argument is not whether Plaintiffs are *bound* to the provisions of the CBAs (no party disputes that they are). What matters instead is whether the elements of issue preclusion are met such that the seven Plaintiffs here are bound to the Third Circuit's judgment regarding the *meaning* of the CBAs to which they are bound. Because the issue-preclusion question is more appropriately resolved on summary judgment after more adequate briefing by the parties, the Court leaves the preclusive effect of

the Third Circuit case for another day.[3] In any event, the possibility that some Plaintiffs may ultimately be precluded from litigating their claims in this case does not make the underlying theory of their claims—that their retiree health benefits were vested—atypical.

Nor is there evidence that litigation surrounding issue preclusion threatens to overtake the lawsuit. *See Bentley v. Honeywell Intern., Inc.*, 223 F.R.D. 471, 484 (S.D. Ohio 2004) (explaining that unique defenses will destroy typicality only "where the defenses against the named representatives are likely to usurp a significant portion of the litigant's time and energy, and there is a danger that the absent class members will suffer if their representative is preoccupied with defenses unique to it" (internal quotation marks and citations omitted)). Defendants' issue-preclusion defense is common to approximately 1,800 members—nearly one-third—of Plaintiffs' proposed class. Resp. 27, ECF No. 383; Reply 10, ECF No. 386. Resolution of this procedural issue will either dispose of a substantial number of Putative Class Members' claims or will allow them to go forward as any other Putative Class Member. Once this issue is decided on summary judgment, it will simply fall out of the litigation. Accordingly,

---

[3] This Court, and subsequently the Sixth Circuit, previously considered the preclusive effect of the Third Circuit case on some of the retirees in this case. The Sixth Circuit, in overturning this Court's decision, found that the Third Circuit decision did not preclude claims made by retirees who were already retired at the time of the lawsuit and were not members of the union-plaintiffs at the time of the Third Circuit's judgment. *See Amos v. PPG*, 699 F.3d 448, 451 (6th Cir. 2012). The Sixth Circuit did not address, however, whether retirees who were still employees, and thus members of the unions, at the time of the Third Circuit's judgment were bound by that judgment. That issue was not before the court. Accordingly, the Sixth Circuit's decision in *Amos*, 699 F.3d 448, does not answer the issue-preclusion question with respect to the seven Plaintiffs at issue here.

there is no reason to believe that the question of issue preclusion will overtake the present lawsuit to the detriment of absent class members.

For all of the above reasons, the Court finds that the Rule 23 typicality requirement is met in this case.

## 5. Adequacy of Representation by Plaintiffs and Counsel

Courts analyzing Rule 23(a)(4)'s adequacy-of-representation requirement must consider two criteria: "(1) the representative must have common interests with unnamed members of the class; and (2) it must appear that the representative[] will vigorously prosecute the interests of the class through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976) (citing *Gonzales v. Cassidy*, 474 F.2d 67, 73 (6th Cir. 1973)). The first criterion overlaps the typicality and commonality requirements. *In re Am. Med. Sys.*, 75 F.3d at 1083. It requires the Court to assess whether Plaintiffs have "sufficient financial and personal involvement to encourage [them] to prosecute the action vigorously, and adequate resources and legal representation to meet the demands of maintaining the action." *Ross*, 257 F.R.D. at 450. It also "acts to ensure that the representatives have interests co-extensive with, rather than antagonistic to, the interests of the other class members." *Ross*, 257 F.R.D. at 447 (citation omitted). "Internal, minor differences in the status and alleged injuries of class members do not bar class certification." *Prater v. Ohio Educ. Ass'n*, No. C2041077, 2008 WL 2566364, at *8 (S.D. Ohio June 26, 2008).

The second criterion "raises concerns about the competency of class counsel." *Falcon*, 457 U.S. at 157 n. 13. "[C]lass counsel must be qualified, experienced, and generally able to conduct the litigation." *Ross*, 257 F.R.D. at 450 (citations omitted). A court may deny certification when the class representatives have "so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Bovee*, 216 F.R.D. at 615 (citations omitted). "Because named class members must act through class counsel, adequacy of representation turns in part on 'the competency of class counsel' and in part on the absence of 'conflicts of interest.'" *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (quoting *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 157 n. 13 (1982)).

With respect to fair representation of the class by Plaintiffs, it is apparent that Plaintiffs have suffered the same injury and possess the same interests as the Putative Class Members they hope to represent. *Whirlpool*, 722 F.3d at 850 (citing *Dukes*, 564 U.S. at 2550). Plaintiffs allege that PPG unilaterally changed or modified their purportedly vested retiree health benefits in violation of the language of the applicable CBAs. This is the same injury Plaintiffs hope to redress for absent class members, who likewise had their retiree health benefits changed or modified even though those benefits allegedly were vested. Accordingly, Plaintiffs are adequate representatives.

Defendants' averments to the contrary are unavailing.  Defendants essentially argue that Plaintiffs have not suffered the same injury because the amounts of damages each has or will incur as a result of Defendants' actions are inconsistent and unique.  This Court already rejected this argument, however, when it bifurcated the proceedings in this case into separate trials on liability and damages.  Order, ECF No. 224.  Furthermore, there is nothing inconsistent about these claims that would suggest each Plaintiff will not adequately represent Putative Class Members.  Indeed, Plaintiffs all seek the same relief: a permanent injunction against PPG from modifying their retiree health benefits and an award of insurance benefits pursuant to the applicable CBAs.

The Court also holds, after careful consideration, that Plaintiffs' counsel are adequate representatives under Rule 23(a).  Plaintiffs' counsel have litigated this case competently since it was first filed in 2005.  They negotiated a settlement in this case for the Axiall Settlement Class, which this Court approved on August 13, 2015.  Moreover, Plaintiffs' counsel have "a wealth of experience . . . litigating retiree benefit and LMRA and ERISA class-action cases . . . ."  Renewed Mot. 18, ECF No. 378.  Accordingly, Plaintiffs' counsel are appointed as class counsel under Rule 23(g).

### 6. Rule 23(b) Requirements

Plaintiffs' proposed class has satisfied the four Rule 23(a) requirements for certification.  That is not, however, the end of the Court's analysis.  The proposed class must also meet Rule 23(b) requirements.  Plaintiffs move for certification of

the proposed class under either Rule 23(b)(1)(A) or Rule 23(b)(2). The Court finds that certification under either subsection is appropriate.

A court may certify a class pursuant to Rule 23(b)(1)(A) if "prosecuting separate actions by or against individual members of the class would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class . . . ." The Court finds this standard is met. If Plaintiffs and Putative Class Members are forced to bring their claims against Defendants separately, inconsistent results in those lawsuits could obligate PPG to award some retirees insurance benefits consistent with the provisions of the relevant CBA, without modifying those benefits during the retiree's lifetime, but exempt PPG from awarding such benefits to other retirees whose benefits are governed by the same CBA. The risk of such inconsistent results demonstrates that this case is fit for certification pursuant to Rule 23(b)(1)(A). *Cf. Reese*, 227 F.R.D. at 498; *Sloan v. BorgWarner, Inc.*, 263 F.R.D. 470, 477 (E.D. Mich. 2009) (finding that, with respect to the plaintiffs' LMRA and ERISA claims of entitlement to lifetime health benefits, "[s]eparate adjudication of Plaintiffs' claims for injunctive or declaratory relief clearly presents a risk of incompatible standards being applied to different members of the Class"). Additionally, for the same reasons the Court already discussed, Defendants' averments that the requirements of Rule 23(a) are not met because "Plaintiffs present individualized claims, which are based on different CBAs (and to the extent Plaintiffs claim they are relevant,

different representations),'" Resp. 33, ECF No. 383, it rejects those same arguments made by Defendants in opposition to certification under Rule 23(b)(1)(A).

Class certification of Plaintiffs' claims is also appropriate under Rule 23(b)(2). A court may certify a class pursuant to Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." "The requirements of this subsection are met when 'the common claim is susceptible to a single proof and subject to a single injunctive remedy.'" *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *21 (E.D. Mich. Aug. 29, 2008) (quoting *Senter*, 532 F.2d at 525). That standard is also met here. Plaintiffs' claims are all based on the question whether PPG may unilaterally modify or terminate Putative Class Members' retiree health benefits and are therefore "susceptible to a single proof and subject to a single injunctive remedy." *See Ford Motor Co.*, 2008 WL 4104329, at * 21 ("Courts routinely certify claims challenging an employer's modification of health care benefits under Rule 23(b)(2), holding that, in such cases, the employer's alleged conduct is directed at the class as a whole and hence class-wide injunctive or declaratory relief is appropriate." (citing cases)).

Accordingly, the Court **GRANTS** Plaintiffs' Renewed Motion for Class Certification.

## B. Certification of Plaintiffs' Proposed Subclass

Plaintiffs Owens and Ratleff ("Delaware Plaintiffs") also seek certification of

a subclass of retirees from PPG's Delaware, Ohio plant (the "Delaware Retirees")

pursuant to Rule 23(b)(1)(A) or (b)(2).  Delaware Plaintiffs propose the following

class definition:

> [M]embers of the general class who are retirees, spouses, surviving
> spouses and eligible dependents of persons who were employed by
> PPG at its Delaware, Ohio facility and retired on and after February
> 16, 1986 but before February 3, 2014, who were represented by the
> UAW during their employment, and who are eligible for retiree health
> coverage under the terms of collectively bargained agreements and
> provisions between UAW and PPG.  In addition, the Subclass
> includes surviving spouses of active employees who have died
> before final judgment in this litigation and who at the time of their
> death worked at the Delaware facility on or after February 19, 1995,
> were represented by UAW, and had attained retirement age, making
> their spouse eligible for retiree medical coverage pursuant to the
> terms of the collectively bargained agreements and provisions
> between UAW and PPG.

Mot. Cert. Subclass 2, ECF No. 397.

Delaware Plaintiffs seek certification of this proposed subclass of Delaware

Retirees because, in addition to the vesting claim raised by the general proposed

class, they wish to assert another claim that is unique to Delaware Retirees.

Specifically, Delaware Plaintiffs allege that, even if the Delaware Retirees' health

benefits never vested, explicit language in the Delaware CBAs in effect from

January 2001 through January 2019 confer continuing health benefits on retirees

who retired under the 1986 Delaware CBA to the current Delaware CBA expiring

in 2019.  Delaware Plaintiffs contend that the same actions by PPG that

purportedly violated the general proposed class members' alleged vested right to

retiree health benefits also violated the Delaware Retirees' non-vested yet

ongoing contractual right to retiree health benefits. While Delaware Plaintiffs

assert that Delaware employees who retired after February 3, 2014, remain

entitled to the retiree benefits set forth in the current Delaware CBA, participation

in the proposed subclass ends with that date because PPG is providing retiree

health benefits as set forth in the CBA to employees who retired after that date.

Delaware Plaintiffs' specific non-vesting claim is based on the following

contractual language that appears in the Delaware CBAs in effect from 2001 until

2019:

> If at the time you retire under the Pension Agreement (other than a Deferred Vested Pension) you are covered for the medical care package under the Program, the following provisions apply:

> For employees who retire on other than a Deferred Vested Pension after February 16, 1986 the medical care package under the program will be continued at company expense, but will be reduced by any benefits the retiree receives or is eligible to receive from Medicare parts A and B.[4]

> For employees who *were hired prior to February 25, 2007 and who*[5] retire on or after May 1, 1992. You must have a minimum of five (5) years of continuous service under the Pension Agreement in order for you and your eligible dependents to continue coverage as a retiree under the Group Medical Benefits Plan. Monthly contributions are listed in the Schedule of Benefits (Section 1.3).

---

[4] This language was added to the 1986 Delaware CBA and was then incorporated into each subsequent CBA up to the present one.

[5] The italicized language was added in 2007 and incorporated into each CBA from 2007 up to the present one.

> For employees hired on or after February 25, 2007: Your health care coverage terminates on the last day of the month prior to your retirement. You may be eligible to continue health care through COBRA. See the COBRA section for details.[6]

*See* Delaware Plans from 1986 to the present, ECF Nos. 280-4, 280-5, 260-6, 280-7, 280-8, 280-12, 280-13, 280-14, 280-15. Section 1.3 in the CBAs in effect from 1986–1992 granted post-retirement insurance benefits that extended beyond Medicare-eligibility at no cost to retirees. In 1992, Section 1.3 was modified such that employees who retired after May 1, 1992, were required to pay $5 and $10 monthly charges for post-retirement insurance benefits.[7] Delaware Plaintiffs assert that since 1992, PPG has not made any other significant changes to the Delaware CBA governing the claims of the Delaware Retiree members of the proposed subclass. Instead, the same key provisions quoted above regarding the continuation of retiree health benefits have been carried over into each successive CBA from 1986 to the present.

Delaware Plaintiffs allege that, from 2001 to the present, PPG has violated these provisions by removing Delaware Retirees from the medical plan set forth in the CBAs and placing them in a new retiree plan with reduced benefits and increased costs. Under Delaware Plaintiffs' non-vesting theory, even if PPG could have modified or terminated their benefits at will (because the benefits

---

[6] This language, aside from the italicized language added in the 2007 CBA, was added to the 1992 Delaware CBA and was then incorporated into each subsequent CBA up to the present one.

[7] Delaware Plaintiffs note that due to the passage of time most surviving retirees in the proposed subclass are those who retired after May 1, 1992. Mot. Cert. Subclass 7, ECF No. 387.

were not vested), PPG nevertheless failed to exercise its right to modify or terminate the benefits.  Instead, according to the Delaware Plaintiffs, PPG continued to use explicit language granting Delaware Retirees a continuing right to receive the health benefits specified in the CBAs throughout.  Therefore, Plaintiffs assert, PPG's change to those benefits violated the express language of the CBAs and thereby violated the LMRA and ERISA.

For the following reasons, the Court finds that the proposed Delaware Retirees' class definition satisfies each of the Rule 23 requirements for certification of the subclass.

### 1. Numerosity

The total number of actual retirees and retirees' dependents and survivors that constitute this proposed subclass exceeds 320.  This is sufficient to satisfy Rule 23's numerosity requirements, and Defendant does not argue otherwise. *See Taylor*, 264 F.R.D. at 288; *Kelly*, 2007 WL 4562913, at *3.

### 2. Commonality and Typicality

The common question raised by the Delaware Plaintiffs' claims is whether PPG has violated the language of the CBAs in effect from 2001 to the present by removing Delaware Retirees from the medical plan provided in the CBAs and placing them in a new retiree plan with reduced benefits and increased costs. This single common question is sufficient to meet Rule 23's commonality requirement.  *See Reese*, 227 F.R.D. at 487.

Moreover, Delaware Plaintiffs' claims are typical of the claims of the entire proposed subclass of Delaware Retirees.  Both Owens and Ratleff retired from the Delaware plant after February 16, 1986: Owens in 1998 and Ratleff in 2004. Seventh Am. Compl. ¶¶ 13, 19, ECF No. 375.  Owens received the retirement benefits provided in the CBA in effect at the time he retired but had those benefits terminated and replaced in 2001 when PPG announced its unilateral changes to all retiree health benefits.  Owens Dep., ECF No. 369-1, PAGEID # 12169.  Thereafter, in 2013, premium contributions for Owens and his wife increased from $10 a month to $131 a month.  *Id.* at PAGEID ## 12164, 12169.

Ratleff received the retirement benefits provided in the CBA in effect at the time he retired until his CBA expired in 2007 and PPG moved all retirees subject to that same CBA into a modified health plan.  Ratleff Dep., ECF No. 369-2, PAGEID # 12173.  By March 2015, Ratleff and his wife were each paying $135 a month in premium contributions instead of their previous $5- and $10-a-month contributions.  *Id.* at PAGEID ## 12170, 12175.

Moreover, beginning in 2017, both Owens and Ratleff were removed from the new retiree plan and were instead provided with a health reimbursement account to which PPG contributes only $125 per month.  The retiree health benefits of all other Delaware Retiree members of the proposed subclass have ostensibly undergone the same modifications.  Therefore, the claims of Delaware Plaintiffs are typical to the entire subclass.  *See Sprague*, 133 F.3d at 99.

Defendants assert substantially the same arguments in opposition to the existence of commonality and typicality between the members of the proposed subclass as they do in opposition to the claims of the general proposed class. For the same reasons as stated in the Court's analysis of the general proposed class's claims, Defendants' arguments fail as applied to the Delaware Retiree subclass's claims. The Court finds the Rule 23 commonality and typicality requirements met.

### 3. Adequacy of Representation by Plaintiffs and Counsel

It is apparent that Delaware Plaintiffs have suffered the same injury and possess the same interests as the proposed subclass of Delaware Retirees they hope to represent. *Whirlpool*, 722 F.3d at 850 (citing *Dukes*, 564 U.S. at 2550). Delaware Plaintiffs allege that, from 2001 to the present, PPG has modified the Delaware Retiree class members' health benefits in contravention of the language of Delaware CBAs in effect from 2001 to the present. These changes, Delaware Plaintiffs assert, have forced Delaware Retirees to pay substantially higher premium contributions than those provided by the Delaware CBA. This is the same injury Delaware Plaintiffs hope to redress for all Delaware Retiree proposed subclass members. Accordingly, Delaware Plaintiffs are adequate representatives of the proposed subclass.

Additionally, Delaware Retirees are represented by the same Counsel who represent the general proposed class. For the same reasons as already stated in the Court's analysis above, Counsel are adequate representatives, and the

Court therefore appoints them as Counsel to the subclass pursuant to Rule 23(g).

### 4. Rule 23(b) Requirements

For the reasons the that entire class meets the Rule 23(b)(1)(A) and 23(b)(2) requirements, the proposed subclass of Delaware Retirees meets those same requirements.

Accordingly, the Court **GRANTS** Delaware Plaintiffs' motion for certification as a subclass.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' Renewed Motion for Class Certification, ECF No. 378, is **GRANTED**, and Delaware Plaintiffs' Motion to Certify a Subclass of Delaware Retirees, ECF No. 379, is **GRANTED**, subject to the Court's slightly modified definition.

Additionally, the Court notes that this case has been languishing for over twelve years and its expeditious resolution is in the best interest of all involved. The Court **ADVISES** the parties that it will not tolerate further undue delay of this case.  Accordingly, the Court will not entertain any motions for reconsideration or for stay of proceedings (unless the parties are engaged in good faith settlement negotiations).

Finally, the Court **ORDERS** the parties to engage in mediation.  To that end, the parties are **DIRECTED** to notify the Court within **TEN (10) days** whether

they wish to proceed with mediation with a mediator chosen and paid for by the parties or with a Magistrate Judge at the Court.

      **IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**