# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| Patricia L. Amos, *et al.*, on behalf of themselves and others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>PPG Industries, Inc., *et al.*,<br><br>　　　　　Defendants. | Case No. 2:05-cv-70<br><br>Judge Michael H. Watson<br><br>Magistrate Judge Chelsey Vascura<br><br>Class Action |

## <u>REPORT AND RECOMMENDATION</u>

Patricia L. Amos, Sally Jones, George Owens, Terry Taylor, John Foster, Alex Olszyk, John W. Zuzik, Arthur Ramos, Robert Ratleff, Richard Ross, Virginia Bakeman, William Brison, Mark B. Bryan, Shirley M. Bryan, Richard Fischer, Lindsay T. Granger, and John P. Detty ("Plaintiffs") and PPG Industries, Inc., PPG Industries Ohio, Inc., PPG Retirement Plans, and Does 1 Through 20 ("PPG" or "Defendants") have entered into a settlement agreement to resolve this class action lawsuit. This Court preliminarily approved the settlement on February 4, 2019. (ECF No. 413). Notice was thereafter given to the class. (ECF No. 416). On April 29, 2019, Plaintiffs filed an unopposed motion for attorneys' fees, costs, and expenses in the amount of $2,350,000.00. (ECF No. 415). On June 3, 2019, Plaintiffs filed their Motion for Final Approval of the Settlement Agreement (ECF No. 411-1) and Plan of Allocation (ECF No. 414-01). (ECF No. 418).[1] On May 31, 2019, PPG filed a brief in support of the settlement. (ECF No. 417). The Fairness Hearing held on June 11, 2019, was referred to the Undersigned to preside over and issue a Report and Recommendation.

---

[1] Capitalized terms used herein will have the meaning provided by the Settlement Agreement (ECF No. 411-1), unless otherwise noted.

Based on Plaintiffs' motion for final approval, their motion for attorneys' fees, costs, and expenses, and the evidence presented at the fairness hearing, it is **RECOMMENDED** that the Court **GRANT** final approval of the Settlement Agreement and Plan of Allocation, award attorney's fees, costs, and expenses in the amount of $2,350,000.00, and enter final judgment in this case.

## I. BACKGROUND

### A. Plaintiffs Sued to Recover Vested Retiree Medical Benefits

On January 21, 2005, Plaintiffs sued PPG under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3). (ECF No. 1). Plaintiffs amended their complaint several times, primarily to include or omit named plaintiffs and defendants, and the operative version—the Supplemental Seventh Amended Complaint—was filed on April 19, 2017. (ECF No. 375).

Plaintiffs bring claims on behalf of themselves and a class of retirees (and their spouses, surviving spouses, and dependents) from thirteen PPG facilities[2] who had been represented as employees by five labor unions[3] and who receive PPG medical benefits in retirement. *Id.* at ¶¶ 29-30. Plaintiffs allege that PPG unilaterally reduced and/or modified retiree medical benefits and shifted costs onto the retirees starting in 2001, and continued to further reduce benefits and

---

[2]     These facilities were located in and/or identified as: Natrium, West Virginia; Fresno, California; Mt. Zion, Illinois; Lake Charles, Louisiana; Cumberland, Maryland; Crystal City, Missouri; Barberton, Circleville, and Delaware, Ohio; and Creighton, Ford City, Greensburg, and Springdale, Pennsylvania.

[3]     The unions are the International Chemical Workers Union, Council of the United Food and Commercial Workers Union ("Chemical Workers"); International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"); United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("Steelworkers"); Allied Chemical & Alkali Workers of America, Local #1 ("Alkali Workers"); and International Association of Machinists and Aerospace Workers ("Machinists").

impose higher premium costs since then.  *Id.* at ¶¶ 35-37.  Plaintiffs further allege that on

January 1, 2017, PPG eliminated its ERISA governed health plan for Medicare-eligible retirees,

replacing it with a Health Reimbursement Arrangement ("HRA") through which it contributed

$125 a month for retirees to use to purchase individual coverage.  *Id.* at ¶¶ 38-39.  In doing so,

Plaintiffs claim, PPG violated a series of collective bargaining agreements ("CBAs") that

allegedly granted them vested medical benefits throughout retirement.  *Id.* at ¶¶ 31-32, 40.

PPG denies that the retirees' benefits vested and denies that it breached the CBAs by

implementing the changes because the underlying CBAs had expired.  *See, e.g.*, (ECF No. 296).

Moreover, PPG asserts that some of the underlying CBAs contained Reservation of Rights

("ROR") provisions that expressly allowed PPG to modify, amend, or terminate benefits at any

time.  *See, e.g.*, *id.* at 26.

Soon after the initial filing in 2005, the Court stayed this case while three unions—the

Chemical Workers, Steelworkers, and Machinists—pursued pre-existing lawsuits filed against

PPG in federal court in Pennsylvania four years earlier, in 2001 (the "Pennsylvania Litigation").

Like Plaintiffs, these unions alleged that retiree benefits were vested and sought an order

compelling PPG to arbitrate the dispute under the arbitration provisions of the CBAs.  The

district court in the Pennsylvania Litigation ruled for PPG, holding that the dispute was not

arbitrable under the expired CBAs and that the retirees' benefits had not vested.  The Third

Circuit affirmed on May 17, 2007.  *International Chemical Workers v. PPG Industries, Inc.*, 236

F. App'x 789 (3d Cir. 2007).

Thereafter, on July 14, 2009, this Court granted summary judgment in favor of PPG, on

the grounds Plaintiffs' claims were barred by collateral estoppel.  (ECF No. 81).  Plaintiffs

appealed, and the Sixth Circuit reversed and remanded the case on November 1, 2012.  *Amos v.*

*PPG Industries, Inc.*, 699 F.3d 448 (6th Cir. 2012).  The case was then stayed pending the

disposition of PPG's petition for certiorari to the Supreme Court, (ECF No. 117), and when it was denied, the stay was lifted on May 30, 2013.  (ECF No. 125).

On October 31, 2014, this Court bifurcated proceedings between liability and damages. (ECF No. 224).  Fact discovery concluded on February 8, 2017.  (ECF No. 360); Declaration of Joel R. Hurt in support of Plaintiffs' motion for preliminary approval of the settlement (ECF No. 411-8 at ¶ 3).

### B.    The Court Certified the Case as a Class Action On Behalf of a "General Class" and "Delaware Subclass"

On May 9, 2017, Plaintiffs moved for class certification.  (ECF No. 378).  Plaintiffs George Owens and Robert Ratleff, retirees from PPG's Delaware, Ohio facility, also filed a motion for certification of a subclass of retirees (the "Delaware Subclass"), based on the unique claim that, while the expired CBAs provided vested benefits, PPG was also in violation of the Delaware CBAs in effect from 2001 to the present, which also provided the subclass with a guarantee of benefits.  (ECF No. 379).  PPG opposed both motions.  (ECF No. 383); (ECF No. 385).

On January 5, 2018, the Court granted both class certification motions.  (ECF No. 393). It certified a "General Class" of past, present, and future retirees (as well as their spouses, surviving spouses, and eligible dependents) from the thirteen PPG facilities, see (ECF No. 393 at 9-10), as well as a "Delaware Subclass."  (ECF No. 393 at 27).

### C.    The Parties Moved For Summary Judgment As To Liability

On March 6, 2018, Plaintiffs Owens and Ratleff filed a summary judgment motion on behalf of the Delaware Subclass under the claim unique to that group (ECF No. 398), PPG filed a motion for summary judgment as to the claims of all class members (ECF No. 399), and Plaintiffs, on behalf of the General Class, also moved for summary judgment.  (ECF No. 401).

The parties filed their respective responses on April 3, 2018. (ECF No. 403); (ECF No. 404); (ECF No. 405); (ECF No. 406).

### D. The Parties Settled While Summary Judgment Motions Were Pending

Thereafter, pursuant to the Court's class certification order, (ECF No. 393 at 33-34), the parties mediated with Magistrate Judge Chelsey M. Vascura on April 18, 2018 in Columbus, Ohio. That mediation ultimately led to the settlement reached here.[4] Hurt Decl. ¶ 4 (ECF No. 411-8). With Magistrate Judge Vascura's assistance over the next two months, the parties reached a compromise and executed an agreement in principle on June 19, 2018. *Id. See* (ECF No. 407); (ECF No. 408). The parties spent the next several months working out the final Settlement Agreement. Hurt Decl. ¶ 4 (ECF No. 411-8).

### E. The Settlement Agreement[5]

The key terms of the parties' agreement to settle this matter are summarized as follows.

#### 1. The Settlement Provides Benefits to General Class Members and Delaware Subclass Members

The "General Class" is defined in the Settlement Agreement as follows:

> All collectively bargained past, present, and future retirees of PPG (as well as the spouses, surviving spouses, and eligible dependents of these retirees) who:
>
> (1) while employed by PPG, were represented by the [the Unions];

---

[4] Following the April 18, 2018 mediation, the parties also participated in settlement conferences before Magistrate Judge Vascura on April 30, 2018, May 16, 23, and 30, 2018, and June 1 and 5, 2018.

[5] The parties informed the Court at the June 11, 2019 Fairness Hearing that there was a correction to their Stipulation of Settlement. Thereafter, the parties filed their Corrected Stipulation of Settlement, which is identical to the previous Stipulation of Settlement except for the deletion of Paragraph 2.2 that contained the requirement to send notice to state and federal agencies pursuant to the Class Action Fairness Act of 2005 ("CAFA"). ECF No. 421. Because the original Complaint was filed before CAFA took effect, CAFA's notice requirements do not apply. *See infra* p. 30, ¶ 6. All references to the "Settlement Agreement" in this Report and Recommendation will refer to the Corrected Stipulation of Settlement in ECF No. 421.

(2) were eligible for retiree medical coverage pursuant to the terms of collectively bargained agreements and provisions between any Union and PPG; and

(3) retired from, or before final judgment in this litigation will retire from, the following PPG facilities, on or after the dates indicated: Barberton (3/1/90); Circleville (10/1/86); Creighton (2/16/84); Crystal City (2/16/84); Cumberland (2/16/84); Delaware (2/16/86); Ford City (2/16/84); Fresno (5/16/84); Greensburg (3/25/84); Lake Charles (5/15/87); Mt. Zion (6/15/84); Natrium (3/1/87); and Springdale (11/1/84)

In addition, the General Class includes, when eligible for retiree health coverage pursuant to the terms of collectively bargained agreements and provisions between any Union and PPG, the surviving spouses of active employees who have died before final judgment in this litigation and who at the time of such employees' death worked at one of the listed facilities (on or after the dates indicated), and were represented by a Union.

Specifically excluded from the Class are employees who were hired after the dates that PPG and the Unions negotiated that persons hired at those facilities after those dates were not entitled to retiree health benefits under an ERISA governed plan (plus their spouses and beneficiaries) if they subsequently retired.

(ECF No. 411-1 at ¶ 1.14).

"Delaware Subclass" means the following:

Members of the general class who are retirees, spouses, surviving spouses and eligible dependents of persons who were employed by PPG at its Delaware, Ohio facility and retired on or after February 16, 1986 but before February 3, 2014, who were represented by the UAW during their employment, and who are eligible for retiree health coverage under the terms of collectively bargained agreements and provisions between UAW and PPG. In addition, the Subclass includes, when eligible for retiree health coverage under the terms of collectively bargained agreements and provisions between UAW and PPG, the surviving spouses of active employees who have died before final judgment in this litigation and who at the time of their death worked at the Delaware facility on or after February 19, 1995, and were represented by the UAW.

*Id.* at ¶ 1.10.

These definitions are slightly revised from those submitted to and approved by this Court in its January 5, 2018 order but were included in the Notice. Class Counsel informed the Court that the original definitions were overbroad in that they suggested, incorrectly, that *all* "surviving spouses of active employees [that were] eligible to retire" were "eligible for retiree medical coverage" and thus had the same claims as the rest of the class. The revised definitions make clear that such "surviving spouses of active employees" will be covered by the settlement only "when eligible for retiree medical coverage" "pursuant to" the CBAs. Hurt Decl. ¶ 5 (ECF No. 411-8); *Compare* (ECF No. 393 at 9, 27) *with* (ECF No. 411-1 at ¶ 1.14, ¶ 1.10). However, the definitions are the same in all other respects. *Id.*

**2. The Settlement Agreement Provides Continued Medical Benefits Through the End of 2025 to General Class Members Not Covered By the Settlement Agreement With Axiall Defendants**

PPG will provide future medical benefits through December 31, 2025 to members of the General Class (including the Delaware Subclass) who were *not* covered by the earlier settlement that Plaintiffs negotiated with Axiall Corporation and Georgia Gulf Corporation ("Axiall"), approved by this Court on August 13, 2015.[6] (ECF No. 411-1 at ¶¶ 11.1-11.3; 1.34). Those General Class members who were covered by the earlier settlement with Axiall will not receive the future benefits described in this section, but they will receive a share of the Lump Sum Payment (described below) along with all other members of the General Class. *Id.* Class Counsel have represented that while they are not identical, the future benefits provided by this settlement are similar to those provided in the settlement with Axiall and will remain in effect for

---

[6] In addition to PPG, Plaintiffs had also proceeded against Axiall, an entity that assumed administration of the retiree medical benefits for former employees from two of the thirteen PPG facilities at issue here (Natrium, West Virginia and Lake Charles, Louisiana) and subsequently made additional changes to those benefits. Plaintiffs settled their class claims against Axiall, and this Court approved that settlement on August 13, 2015. (ECF No. 320).

the same period of time, placing all General Class members in a similar position with regard to their future retiree medical benefits. See Hurt Decl. ¶¶ 6-7 (ECF No. 411-8).

### a. General Class members who are eligible for Medicare

If eligible for Medicare, PPG will continue to fund an HRA through December 31, 2025 for such General Class members to access for reimbursement of qualified medical expenses. (ECF No. 411-1 at ¶ 11.2). During this period, PPG will continue to provide a $125 monthly stipend and a "catastrophic prescription drug benefit" to a General Class member who is enrolled in a PPG HRA and who enters the "catastrophic" coverage phase of Medicare Part D. *Id.* at ¶ 11.2.b.[7] For such individuals, PPG will reimburse the 5% in prescription drug costs an individual would otherwise pay in the catastrophic coverage phase during the remainder of the year. *See id.*

### b. General Class members who are not eligible for Medicare

If not eligible for Medicare, PPG will provide the same benefit plan that it provides to other non-Medicare-eligible PPG retirees through December 31, 2025. *Id.* at ¶ 11.3. During this period, PPG will retain the discretion to change plan features such as contributions, plan design, administrators/carriers, etc., so long as it provides such General Class members the same benefit plan it is providing to its other non-Medicare-eligible retirees. *Id.* at ¶ 11.3.a. If it terminates coverage altogether for the other non-Medicare-eligible retirees who are not in the General Class, PPG will provide a $400 monthly stipend through an HRA from the date it terminates such coverage through December 31, 2025. *Id.* at ¶ 11.3.c. If a General Class member becomes

---

[7] Plaintiffs pointed out in their motion for final approval that the settlement with Axiall similarly provided that the Medicare-eligible class members covered by that settlement will receive a monthly credit of $100 through 2025, and a one-time lump sum subsidy of $325. (ECF No. 266-2 at ¶ 3.b.).

eligible for Medicare before December 31, 2025, he or she will get the benefit for Medicare-eligible General Class members (as described above) at that time. *Id.* at ¶ 11.3.d.[8]

### c. General Class members who continue to receive benefits under a current CBA

For those covered by a health plan for active employees that is set forth in a CBA when the settlement is finally approved, PPG will continue to provide such coverage until the expiration date set forth in the CBA, or any mutually agreed upon extension of the expiration date. *Id.* at ¶ 11.4. At that time, such General Class members will get the benefits described in the sections above based on whether they are eligible for Medicare. *Id.*[9]

### 3. The Settlement Agreement Provides a Lump Sum Payment Distributed According to the Proposed Plan of Allocation

PPG will pay a lump sum of $7,650,000 to resolve the lawsuit, which will be distributed in a manner that will partially reimburse General Class members and Delaware Subclass members for the medical expenses and costs of medical coverage they incurred as a result of the benefit changes that were challenged in the lawsuit. *Id.* at ¶¶ 7.1-7.3. This lump sum will be distributed to all living General Class members (*including* those covered by the Axiall settlement) except those who are still covered by a health plan for active employees as set forth in a current CBA. *Id.* at ¶ 7.3; (ECF No. 414-1, the Plan of Allocation, at ¶¶ D and E).[10] One-

---

[8] Plaintiffs' pointed out in their motion for final approval that the settlement with Axiall similarly provided that the Non-Medicare-eligible class members covered by that settlement received, beginning in 2016, a monthly subsidy of $495, and once they became eligible for Medicare, received the same benefits as the Medicare-eligible class members. (ECF No. 266-2 at ¶ 3.a.).

[9] Plaintiffs pointed out in their motion for final approval that the settlement with Axiall similarly provided that class members covered by a current contract would receive the benefits under that contract until expiration, at which point they would receive the same benefits as the rest of the class. (ECF No. 266-2 at ¶ 3.c.).

[10] Plaintiffs originally submitted the proposed Plan of Allocation (ECF No. 411-6) on January 17, 2019 with their preliminary approval motion, and then filed a corrected version (ECF

half ($3,825,000) will be allocated to Delaware Subclass members, and the other half ($3,825,000) will be allocated to General Class members not in the Delaware Subclass. (ECF No. 414-1 at ¶ C). The proposed Plan of Allocation provides that, should any portion of the lump sum of $7,650,000 remain unclaimed by class members after it is distributed according to the Plan, one half of the remainder shall be paid to the Patient Advocate Foundation, and the other half to the Greater Pittsburgh Community Food Bank. *Id.* at D.6 and E.6.

### a. General Class members who are not in the Delaware Subclass

All living General Class members who are not in the Delaware Subclass, except for those still covered by a health plan for active employees as set forth in a current CBA, will receive an equal share of the $3,825,000 allocated to this group. *Id.* at ¶ D.1. Based on the most recent class census information provided in the litigation, Plaintiffs currently estimate such payments to be approximately $1,000. *See* Hurt Decl. ¶¶ 8-10 (ECF No. 411-8). Those who have a PPG HRA will receive their share through a one-time contribution to their HRA. (ECF No. 414-1 at ¶ D.2). Those who do not have a PPG HRA will be paid by check. *Id.* at ¶ D.3-5.

### b. Delaware Subclass members

The $3,825,000 allocated to the Delaware Subclass will be distributed proportionally to the living Subclass members based on the length of time for each between (i) the date PPG first implemented the changes at issue in the lawsuit or, if later, the date he/she began participating in a PPG retiree medical plan other than the Plan negotiated by PPG and the UAW, and (ii) the date of final approval or, if earlier, the date his/her coverage through PPG terminated due to death, remarriage, re-employment, or reaching the age limit in the case of a child. *Id.* at ¶ E.2-4. Additionally, living Subclass members who are the surviving spouse of a deceased Subclass

---

No. 414-1) on April 1, 2019 to correct a minor omission in the first version. *See* (ECF No. 414) (describing correction).

member will receive the share of the lump sum payment that their deceased spouse would have otherwise received if he/she was still living. *Id.* Delaware Subclass members will be paid by check. *Id.* at ¶ E.5.

### 4. PPG Will Pay Administrative Expenses and Plaintiffs' Attorneys' Fees, Costs, and Litigation Expenses.

Plaintiffs have retained a third-party settlement administrator to set up a settlement fund in order to receive and distribute the portions of the lump sum not to be disbursed through an HRA. Hurt Decl. ¶ 11 (ECF No. 411-8). Defendants have agreed to pay up to $50,000 towards the costs of settlement administration, but any costs above that amount will be deducted from the settlement fund prior to distribution to the members of the General Class and Delaware Subclass. (ECF No. 411-1 at ¶ 8.2). Defendants also agreed to mail notice of the Settlement Agreement to the class and pay the cost of doing so. *Id.* at ¶ 2.3. Finally, Defendants have also agreed not to oppose Plaintiffs' Motion for Attorneys' Fees, Costs and Expenses in the amount of $2,350,000. *Id.* at ¶¶ 10.1-10.3.

### F. This Court Granted Preliminary Approval

On January 17, 2019, Plaintiffs moved for preliminary approval of the Settlement Agreement and the proposed Plan of Allocation. (ECF No. 411). On February 4, 2019, the Court amended its January 5, 2018 class certification order (ECF No. 393) to adopt the modified definitions of the General Class and Delaware Subclass, granted preliminary approval of the Settlement Agreement and proposed Plan of Allocation, and set the Final Fairness Hearing for June 11, 2019. (ECF No. 413).

### G. Notice

In accordance with the Court's February 4, 2019 Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement Agreement (ECF No. 412), on February 19,

2019, PPG mailed notices of the proposed settlement ("Class Notices") to all members of the General Class and the Delaware Subclass via First Class mail. (ECF No. 416 at ¶¶ 2, 7). The Class Notices included: basic information about the parties, the PPG facilities at issue, the litigation, the Court, and the settlement; a description of who is a member of each class; a description of the benefits given to class members; information about the lawyers representing the class members; information about how class members can object to the settlement (and specifically advised that the deadline for objecting was May 12, 2019); information concerning the fairness hearing, including the date, location, and whether class members will be allowed to speak at the fairness hearing; information about what will happen if class members do nothing at all; and information about how class members can learn more about the settlement and the hearing. As of May 12, 2019, there were no objections from members of the General Class and no objections from members of the Delaware Subclass. (ECF No. 416 at ¶ 15).

Karen Rathburn is PPG's HR Director, Global Benefits and Mobility. She oversaw the distribution of the Class Notices to the members of the General Class and the Delaware Subclass. On May 31, 2019, PPG filed the Declaration of Karen P. Rathburn, (ECF No. 416), which verifies that PPG mailed Class Notices to all class members. *See* Rathburn Decl., (ECF No. 416.) 176 Class Notices were returned as undeliverable. *Id.* at ¶ 9. 11 Class Notices were returned due to the death of the addressee. *Id.* at ¶ 10. On a rolling basis, PPG advised Class Counsel of undeliverable and/or returned Class Notices. On a rolling basis, Class Counsel provided PPG's counsel with updated addresses for those individuals whose Notices were returned. *Id.* at ¶ 11. PPG re-sent Class Notices to the living class members whose Class Notices were returned and whose contact information was able to be determined. *Id.* at ¶ 14.

After the Fairness Hearing the parties notified the Court that thirteen eligible Class Members did not receive Notice. *See* Order Mem. (ECF No. 423.) The parties mailed letters to

those remaining eligible Class Members, informing them of the mailing issue, providing the Notice sent to other Class Members, and explaining that the Court held a Fairness Hearing on June 11, 2019. The Undersigned granted those thirteen eligible Class Members additional time to object to the Settlement. Order Mem. (ECF No. 423.) The Undersigned held additional conferences to monitor the progress of the Notice. On August 16, 2019, the Undersigned held another conference where the parties informed the Court that all but two of the Notices have been successfully received and there were no objections. Although two mailings were again returned as undeliverable, Plaintiffs' counsel requested no further extensions of the objection process, in part, due to the age of the case and the overall substantially high rate of successful mailings. Defendant did not oppose Plaintiffs' request. Accordingly, the Undersigned found that the Notice was reasonably calculated, under all the circumstances, to apprise all the interested parties of the pendency of the action and afforded them an opportunity to object such that it complied with due process. The Undersigned found that no further extensions of the objection period would be necessary to accommodate these last two eligible class members. The parties will nevertheless attempt to re-mail Notice to the two remaining individuals.

### H. Plaintiffs Moved For Attorneys' Fees, Costs, and Expenses and Final Approval

On April 29, 2019, Plaintiffs filed their Motion for Attorneys' Fees, Costs and Expenses in the amount of $2,350,000.00, and provided supporting declarations and fee and expense records from Class Counsel, Joel R. Hurt, Timothy F. Cogan, and Barry A. Macey. (ECF No. 415); (ECF No. 415-1 through ECF No. 415-15). On June 3, 2019, Plaintiffs moved for an order finally approving the Settlement Agreement and Plan of Allocation. (ECF No. 418).

## II. APPROVAL OF THE CLASS ACTION SETTLEMENT AGREEMENT AND PLAN OF ALLOCATION

For the reasons that follow, it is **RECOMMENDED** that the Settlement Agreement, Plan

of Allocation, and Plaintiffs' Motion for Attorneys' Fees, Costs, and Expenses be approved.

### A.    The Settlement Agreement Merits Final Approval

In deciding whether to approve a proposed settlement, the Court must consider whether it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, the Court considers the following factors:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Poplar Creek Development Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011) (citations and internal quotation marks omitted). The Court "enjoys wide discretion in assessing the weight and applicability of these factors." *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992).

### 1.    The Risk of Fraud or Collusion

First, there is no evidence – or even a suggestion – that the settlement was the product of fraud or collusion. *See IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006) ("Courts presume the absence of fraud or collusion unless there is evidence to the contrary."). Rather, the settlement is the result of arm's-length, well-researched, and protracted negotiations with the assistance of Magistrate Judge Vascura.[11] This factor favors approval of the Settlement.

### 2.    Complexity, Expense, and Likely Duration of the Litigation

Generally, "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics Pacing*

---

[11]    The parties also attempted private mediation on several occasions over the course of the litigation.

14

*Systems, Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (quoting *In re Austrian and German Bank Holocaust Litigation*, 80 F.Supp.2d 164, 174 (S.D.N.Y. 2000)).

Further, while all litigation involves risk, "in retiree benefits litigation" "delay, at the least diminishes – and for some class members eliminates – the value of possible victory at some point in the distant future." *Leonhardt v. Arvin-Meritor*, 581 F.Supp.2d 818, 836 (E.D. Mich. Oct. 7, 2008). Other courts have recognized that this consideration weighs in favor of settlement in retiree health litigation. *Sheik v. Automotive Component Carrier, LLC*, No. 09-14429, 2010 WL 3070130, *12 (E.D. Mich. Aug. 2, 2010) ("the delay and risk inherent in retiree health benefits class actions make these cases 'particularly' appropriate for settlement 'through negotiation today rather than litigation tomorrow.'") (citing *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007)); *Redington v. Goodyear Tire & Rubber Co.*, No. 5:07-cv-1999, 2008 WL 3981461, *13 (N.D. Ohio Aug. 22, 2008) ("Delay will not benefit the Class Members, an elderly group of individuals."); *Thonen v. McNeil-Akron, Inc.*, 661 F.Supp. 1276, 1280 (N.D. Ohio 1987) (approving settlement of claims for retiree healthcare benefits, recognizing that the settlement removed the uncertainty of litigation for the elderly plaintiffs).

If this matter is not settled at this time, and the Court proceeded to enter summary judgment for either the General Class, the Delaware Subclass, or PPG, there would almost certainly be an appeal which would prolong an already protracted case. If the Court were to deny the summary judgment motions such that the matter would proceed to trial (either in whole or in part), there would be pre-trial motions, case management conferences and hearings, and trial preparation, which would result in the expenditure of many additional hours of effort.

The parties have been litigating in this Court since 2005. Settling the case now will result in the saving of time and money to the parties and the Court, and confer a significant benefit to a

large class of retirees without further delay, cost, and uncertainty. This factor also favors approval of the settlement.

### 3. The Amount of Discovery Engaged in By the Parties

To confirm that Plaintiffs "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the Court must consider the amount of discovery engaged in by the parties. *In re Broadwing, Inc. ERISA Litigation*, 252 F.R.D. 369, 374 (S.D. Ohio 2006). "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *UAW v. General Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006).

In this case, the parties engaged in extensive discovery, thus providing them with more than enough information to evaluate the adequacy of the settlement. As Class Counsel has informed the court, not only did the parties have access to the relevant agreements which provided the basis for Plaintiffs' claims for vested retiree medical benefits, but by the time discovery concluded, the parties had exchanged thousands of pages of documents and taken the depositions of 39 witnesses (including corporate designees), including Plaintiffs, labor negotiators for PPG and all five unions, employees from PPG's corporate benefits department, and actuarial experts. *See* Hurt Decl. ¶ 3, (ECF No. 411-8).

In short, the record demonstrates that both parties were fully appraised of the legal and factual issues presented as well as the strengths and weaknesses of their cases, and made well-informed decisions to enter into the Settlement Agreement following exhaustive discovery and fourteen years of litigation. This factor weighs in favor of approving the settlement.

### 4. The Likelihood of Success on the Merits

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek*, 636 F.3d at 245 (quoting *In re General Tire & Rubber Co. Securities Litigation*, 726 F.2d 1075, 1086 (6th Cir. 1984)).

Here, the primary disputed issue is whether the General Class has a vested right to retiree health benefits. For years, the Sixth Circuit applied a body of case law drawn from the decision in *UAW v. Yard-Man*, 716 F.2d 1476, 1482 (6th Cir. 1983), which held that "retiree benefits are in a sense 'status' benefits which, as such, carry with them an inference that they continue so long as the prerequisite status is maintained."

In January 2015, the Supreme Court rejected the *Yard-Man* inference and what it called the "refus[al] to apply general durational clauses to provisions governing retiree benefits," instructing courts to apply "ordinary principles of contract law" instead. *M&G Polymers USA, LLC v. Tackett*, 135 S.Ct. 926, 935 (2015). Not long afterwards, the Sixth Circuit applied *Tackett* to a series of CBAs in *Gallo v. Moen*, 813 F.3d 265 (6th Cir. 2016), where it held that the CBAs at issue there unambiguously did not vest benefits.[12] The Court of Appeals later reached the same conclusion about the agreements in *Cole v. Meritor, Inc.*, 855 F.3d 695 (6th Cir. 2017) and *Watkins v. Honeywell International, Inc.*, 875 F.3d 321 (6th Cir. 2017).

On the other hand, in *UAW v. Kelsey-Hayes Co.*, 854 F.3d 862 (6th Cir. 2017) and *Reese v. CNH Industrial N.V.*, 854 F.3d 877 (6th Cir. 2017), the Sixth Circuit applied *Tackett*, and having found the relevant agreements to be ambiguous, considered extrinsic evidence and determined that benefits were intended to vest. The Supreme Court later weighed in once again

---

[12]     Just prior to the *Gallo* decision, the Sixth Circuit issued an interpretation of the ruling in *Tackett v. M&G Polymers USA LLC*, 811 F.3d 204, 208 (6th Cir. 2016), but remanded the case to the district court instead of ruling on the merits of the claim.

in both cases.  In *Reese*, it reversed the decision and held that the Court of Appeals had not

complied with "*Tackett's* direction to apply ordinary contract principles" because "[t]he Sixth

Circuit did not point to any explicit terms, implied terms, or industry practice suggesting that the

. . . agreement vested health care benefits for life." *CNH Industrial N.V. v. Reese*, 138 S.Ct. 761,

765 (2018).  The Supreme Court also vacated the judgment in *Kelsey-Hayes* and remanded for

further consideration.  *See* 138 S.Ct. 1166 (2018).

Just days after the parties filed their summary judgment motions, the Sixth Circuit issued

a ruling in *Cooper v. Honeywell*, 884 F.3d 612 (6th Cir. 2018), where it held that retirees were

unlikely to succeed on their claims for benefits that survived CBA expiration despite language

granting benefits "until age 65."  Two more Sixth Circuit decisions were issued after summary

judgment briefing concluded.  In *Fletcher v. Honeywell*, 892 F.3d 217 (6th Cir. 2018), the court

held that the CBAs unambiguously did not vest benefits for retirees despite language providing

explicitly for lifetime benefits for surviving spouses and dependents.  The court in *IUE-CWA v.

General Electric Co.*, 745 F. App'x 583 (6th Cir. 2018) likewise held that the agreements there

were unambiguous in favor of the defendant company.  Less than a month after Plaintiffs filed

their motion for preliminary approval, the Sixth Circuit issued yet another retiree health decision

finding that the pertinent agreements unambiguously provided that benefits ended with the

agreement.  *Zino v. Whirlpool, Corp.*, Nos. 17-3851/3860, 2019 WL 644883 (6th Cir. Feb. 15,

2019) (unpublished).

Moreover, Plaintiffs would have had to face the issue of what effect, if any, the Third

Circuit's 2007 ruling would have on their claims, as noted by this Court in its January 5, 2018

class certification order.  (ECF No. 393 at 20-21 and n.3).  As to the unique claims of the

Delaware Subclass, success was not guaranteed, as PPG had countered that, among other things,

the Delaware agreements included "duration language" as well as "reservation of rights" provisions that doomed their claims. (*See, e.g.*, ECF No. 405).

In light of the above, the risk of failure to Plaintiffs and the classes, weighed against the certainty of benefits provided by the Settlement Agreement, favors approval. *See, e.g.*, *Office and Professional Employees International Union v. UAW*, 311 F.R.D. 447, 456 (E.D. Mich. 2015) (observing that "the litigation of retiree benefit claims involves considerable legal uncertainty," and that because of the lack of certainty as to "how the Supreme Court's decision [in *Tackett*] may affect the law in this area," "the claims in this case involve significant legal risk to the class" and approving settlement).

## 5. The Opinions of Class Counsel and the named Plaintiffs

The recommendation of Class Counsel, skilled in class actions, that the Court should approve the Settlement is entitled to deference. *See, e.g.*, *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs . . . . [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."). *See also Kritzer v. Safelite Solutions, LLC*, No. 2:20-cv-0729, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

In this case, as established by the materials filed in support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Expenses, Class Counsel have extensive experience in class action and employment litigation. *See* Hurt Decl. ¶¶ 8-13, (ECF No. 415-1) and firm resume (ECF No. 415-3); Cogan Decl. ¶¶ 1-3, (ECF No. 415-8) and resume (ECF No. 415-9); Macey Decl. ¶¶ 1-6 (ECF No. 415-12) and firm resume (ECF No. 415-13). After significant discovery and arm's-length negotiations, the parties reached a settlement in principle. Equipped with extensive

experience, Class Counsel have concluded that this settlement is fair and reasonable and confers

substantial benefits to the class. The Plaintiffs also approve of the settlement, as Plaintiff Ratleff

indicated on the record at the Fairness Hearing. This factor favors approval of the proposed

settlement.

### 6.    The Reaction of Absent Class Members

The Court must also consider the reaction of the absent class members. *Poplar Creek*,

636 F.3d at 244; *In re Broadwing*, 252 F.R.D. at 376.

Here, PPG mailed Class Notices to all members of the General Class and the Delaware

Subclass. (ECF No. 416 at ¶ 2).[13]  176 of the 3,042 Class Notices were returned as

undeliverable. *Id.* at ¶¶ 7, 9. After working with Class Counsel to determinate updated address

information for class members whose Class Notices were returned as undeliverable, PPG re-

mailed 52 Class Notices. *Id.* at ¶ 12. PPG also re-mailed 27 Class Notices to class members for

whom Class Notices had previously been returned because they were temporarily away. *Id.*

Despite such notice, no objections were filed, which creates the inference that all or most

of the class members had no concerns about the proposed settlement. This positive response

weighs in favor of approving the settlement. *See, e.g.*, *In re Broadwing*, 252 F.R.D. at 376.

### 7.    The Public Interest

"Public policy generally favors settlement of class action lawsuits." *Hainey v. Parrott*,

617 F.Supp.2d 668, 679 (S.D. Ohio 2007) (citations omitted). In this case, the settlement confers

immediate benefits on the class, avoids the risks and expense in further litigation, and conserves

judicial resources. This factor favors approving the settlement.

---

[13] As discussed previously in Section G regarding Notice, Class Notices were also sent to thirteen
eligible Class Members after the Fairness Hearing, only two of which were returned as
undeliverable. Of the eleven who received the Notice, none objected.

**B.     The Plan of Allocation Also Merits Final Approval**

The standards discussed above, applicable to approval of a settlement, also govern the

Court's review of the Plan of Allocation.  *New York State Teachers' Retirement System v.*

*General Motors Co.*, 351 F.R.D. 226, 235 (E.D. Mich. 2016).  "An allocation formula need only

have a reasonable, rational basis, particularly if recommended by experienced and competent

class counsel."  *In re Crocs, Inc., Securities Litigation*, 306 F.R.D. 672, 692 (D. Colo. 2014)

(quoting *Maley v. Del Global Techs. Corp.*, 186 F.Supp.2d 358, 367 (S.D.N.Y. 2002)).

While the Plan of Allocation proposed here does provide that Delaware Subclass

members will receive a greater share per person than the members of the General Class, Class

Counsel believe that this distribution is fair and reasonable to account for the fact that the

Delaware Subclass had a claim that PPG was also in violation of the Delaware CBAs in effect

from 2001 to the present, which allegedly provided the subclass with a guarantee of benefits (and

which unlike the vesting claim, had not been the subject of a post-*Tackett* decision of the Sixth

Circuit).  Hurt Decl. ¶¶ 12-13 (ECF No. 411-8).  As this claim was separate from and in addition

to the General Class' vesting claim, it provided the Delaware Subclass with a second opportunity

to obtain relief.  Therefore, this factor increases that subclass's "likelihood of success on the

merits," and connotes that the different treatment of the two groups under the Plan of Allocation

is fair and reasonable.

Given the larger amount to be divided among the relatively small number of Delaware

Subclass members (estimated at 394 individuals), Plaintiffs' proposed formula for allocating

money based on each such eligible subclass members' "loss period" is designed to approximate

their actual lost benefits.  *Id.* at ¶ 13.  As to the rest of the General Class, as the size of the class

is significantly larger *vis-à-vis* the lump sum payment, Class Counsel determined that dividing

the lump sum payment evenly such that each recipient receives the same amount would be

simple and fair, whereas the administrative costs associated with a more complicated distribution formula for this group would likely outweigh the benefits. *Id.* at ¶ 14. Finally, the lump sum is allocated only to living class members to maximize the relief provided by the payment, for administrative simplicity, and because the deceased class members received a lifetime of benefits from PPG whereas the living class members' rights to such benefits will end at the end of 2025. *Id.* at ¶ 15. In light of these reasonable considerations, the Undersigned finds that the distribution plan is fair and adequate.

For these reasons, and in light of the seven factors discussed above, it is

**RECOMMENDED** that the Court find the settlement's Plan of Allocation to be fair, reasonable, and adequate.

### III. ATTORNEY'S FEES, COSTS, AND EXPENSES

Plaintiffs have moved, pursuant to Fed. R. Civ. P. 54(d)(2), the Settlement Agreement, and this Court's preliminary approval order, for a total fee and expense award of $2,350,000.00, representing an award of $2,047,064.24 in attorneys' fees and an award of $302,935.76 in costs and expenses. *See* (ECF No. 415). PPG agreed not to oppose this request.

Rule 23 authorizes a court to "award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Further, under ERISA, 29 U.S.C. § 1132(g)(1), "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party," where that party has achieved "some degree of success on the merits." *Hardt v. Reliance Standard Life Insurance Co.*, 560 U.S. 242, 245 (2010).

The Undersigned concludes that Plaintiffs are entitled to attorneys' fees and costs pursuant to the parties' settlement agreement. Similarly, the fee and cost award is justified under ERISA, 29 U.S.C. § 1132(g)(1), as the Settlement Agreement clearly represents "some degree of success on the merits" within the meaning of *Hardt*. *See Templin v. Independence*

*Blue Cross*, 785 F.3d 861, 866 (3d Cir. 2015) (an ERISA plaintiff can achieve "some degree of success on the merits" by virtue of a voluntary settlement agreement, where the "*litigation* activity pressured a defendant to settle or render to a plaintiff the requested relief"). *See also Temme v. Bemis Co., Inc.*, 762 F.3d 544, 550 (7th Cir. 2014); *Scarangella v. Group Health, Inc.*, 731 F.3d 146, 154-55 (2d Cir. 2013).

Once a party has established some degree of success on the merits, the request for fees may be evaluated under a five-factor test, although no single factor is determinative: (1) the degree of the opposing parties' culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorneys' fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions. *See Moon v. Unum Provident Corp.*, 461 F.3d 639, 642-43 (6th Cir. 2006); *Geiger v. Pfizer, Inc.*, 549 F. App'x 335, 338 (6th Cir. 2013). Upon consideration, the Undersigned finds that while the first, third, and fifth factors are neutral, on balance they support an award of fees and costs since PPG can satisfy the award and the lawsuit was brought to benefit a class and will result in guaranteed retiree medical benefits through 2025 for thousands of class members.

A.      **Attorneys' Fees**

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). District courts apply a two-part analysis to assess the reasonableness of an attorney fee petition. *See In re Cardinal Health Inc. Securities Litigation*, 528 F.Supp.2d 752, 760 (S.D. Ohio 2007). First, the Court must determine the appropriate method to calculate the fees, using either the percentage of fund or the

Lodestar approach. *Id*. Whichever method is utilized, the Sixth Circuit requires "only that awards of attorney"s fees by federal courts in common fund cases be reasonable under the circumstances." *Rawlings*, 9 F.3d. at 516. Second, the Court must consider six factors to assess the reasonableness of the fee. *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009); *Ramey v. Cincinnati Inquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974).

Plaintiffs have requested an attorney fee award of $2,047,064.24. Given the facts of this case, the Undersigned finds that the requested fee is a reasonable percentage of the fund and reasonable under a "Lodestar" analysis, and **RECOMMENDS** that the request be approved.

### 1.    The Percentage of the Fund Method

In performing this analysis, "courts must calculate the ratio between attorney's fees and benefit to the class" where "[a]ttorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class." *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016). "To determine the amount of the fund for purposes of this analysis, courts include all amounts benefitting the class, including those amounts typically born by the class, such as attorneys' fees and notice and administration costs." *Rikos v. Proctor & Gamble Company*, No. 1:11-cv-226, 2018 WL 2009681, *8 (S.D. Ohio April 30, 2018) (internal citations omitted). Typically, courts award attorneys' fees in an amount equaling between 20% and 50% of the total amount of the common fund. *In re Broadwing*, 252 F.R.D. at 381; *see also*, *Rikos*, 2018 WL 2009681, *9; *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 WL 4776977, at *5 (S.D. Ohio Oct. 3, 2018); *Chesher v. Neyer*, No. 1:01-cv-00566, 2007 WL 4553908, *2 (S.D. Ohio Dec. 19, 2007).

Here, the money payments provided by the settlement include the lump sum payment of $7,650,00.00 to be allocated among eligible class members and the $2,350,000.00 fee and expense award, for a total of $10,000,000.00. The requested fee of $2,047,064.24 therefore

represents just 20.5%, well within the appropriate range. Notably, this valuation does not take into account that PPG has agreed to pay up to $50,000.00 for administrative costs, or more importantly, the fact that the settlement guarantees that PPG will continue providing thousands of General Class members, *see* Hurt Decl. ¶¶ 9, 13 (ECF No. 411-08), with retiree medical benefits—of at least $1,500 per year for each class member—through 2025.

### 2. The Lodestar Method

"The lodestar is the number of hours reasonably expended on the case multiplied by the attorney's reasonable hourly rate." *Dowling v. Litton Loan Servicing, LP*, No. 05-cv-098, 2008 WL 906042, *1 (S.D. Ohio Mar. 31, 2009), *affirmed*, 320 F. App'x 442 (6th Cir. 2009). "Although there is a strong presumption that the lodestar figure represents a reasonable fee . . . this does not end the inquiry. The Court has the discretion to adjust the award depending on a plaintiff's success, the complexity of the case, and the risk of recovery." *Id.* at *1 (internal citations and quotation marks omitted).

### a. Hourly Rate

"It is well-established that a district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *American Broadcasting Companies, Inc. v. Brunner*, No. 1:04-cv-750, 2008 WL 11450441, *10 (S.D. Ohio Sept. 30, 2008) (citations omitted). "Courts should look to the prevailing market rate in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* "In ascertaining the proper 'community,' district courts may 'look to national markets, an area of specialization, or any other market they believe is appropriate to fairly compensate attorneys in individual cases.'" *Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 WL 6676131, *4 (S.D. Ohio Dec. 21, 2012) (quoting *McHugh v. Olympia Entertainment, Inc.*, 37 F. App'x 730, 740 (6th Cir. 2002)).

"Rates awarded in prior cases may be some evidence of what the market rate is, but they do not set the market rate." *Dowling*, 320 F. App'x 442, 447 (6th Cir. 2009) (citation omitted). Because the market rate for attorneys varies, "the Court may look to other indicia of reasonableness, principally the attorney's customary billing rate." *Dowling*, 2008 WL 906042, at *1 (citation omitted). "A district court may rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Van Horn v. Nationwide Property & Casualty Insurance Co.*, 436 F. App'x 496, 499 (6th Cir. 2011). Absent any objection, the Court will look to the prevailing national market rates for attorneys involved in complex class action ERISA litigation with the amount of experience similar to that of Class Counsel.

Plaintiffs request the following hourly rates for Class Counsel:

| | |
|---|---|
| Ellen M. Doyle: $625/hour | Joel R. Hurt: $530/hour |
| William T. Payne: $625/hour | Barry A. Macey: $500/hour |
| Pamina Ewing: $550/hour | Elizabeth Rabenold: $495/hour |
| Timothy F. Cogan: $350/hour | Ruairi McDonnell: $310/hour |
| Robert A. Hicks: $350/hour | |

The Undersigned finds each of these rates reasonable. First, the rates are justified given the amount and nature of experience of respective counsel. *See* Plaintiffs' Motion for Attorneys' Fees, Costs, and Expenses 13-19 (ECF No. 415); Hurt Decl. ¶¶ 5, 8-13 (ECF No. 415-1); Cogan Decl. ¶ 4 (ECF No. 415-8); Macey Decl. ¶¶ 3-5, 11-12 (ECF No. 415-12). Second, Class Counsel's award history supports their requested hourly rates. *See* Hurt Decl. Exhibit C (ECF No. 415-4); Cogan Decl. ¶ 2 (ECF No. 415-8). Third, Plaintiffs have submitted supporting declarations from experienced attorneys attesting to the reasonableness of Class Counsels' rates. *See* David M. Cook Decl. ¶¶ 8-12 (ECF No. 415-6); Ronald Dean Decl. ¶¶ 15-18 (ECF No. 415-

26

7).  Finally, Class Counsel's rates are supportable when compared with rates approved by this Court in this case, *see* (ECF No. 320 at 24-25); as well as other district courts in the Sixth Circuit in comparable cases from prior years.  *See* ECF No. 91, *Newman, et al. v. Centrus Energy Corp., et al.*, 1:15-cv-00449-MRB (S.D. Ohio Jan. 11, 2019); *Lowther*, 2012 WL 6676131, *4 (concluding that $500 per hour was a reasonable rate for senior attorneys and that rates between $100 and $450 per hour were reasonable for other attorneys and involved staff); *Bailey v. AK Steel Corp.*, 2008 WL 553764, *2-3 (S.D. Ohio Feb. 28, 2008).[14]  Accordingly, the Undersigned finds the above listed hourly rates are reasonable and should be approved.

### b.  Number of Compensable Hours

Having established the reasonable hourly rate, the Undersigned now turns to the number of compensable hours.  The Court only awards fees for hours reasonably expended.  *Dowling*, 2008 WL 906042, at *2 (citation omitted). That is, "[p]laintiffs' attorneys should not recover for hours that are excessive, redundant, or otherwise unnecessary." *Id.* (internal quotation marks and citation omitted).  To determine whether hours expended are reasonable, the Court looks to " "'whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed.'" *Id.* at *3 (citation omitted).

> The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended. If a claimant clears this hurdle, the burden shifts to the adverse party to demonstrate that a particular entry represents frivolous work. Once

---

[14]  The Court notes that the rates awarded to lead counsel in *Lowther* and *Bailey*, and to Class Counsel in this case in 2015, are lower than the current rates sought for Class Counsel. Nevertheless, "setting hourly rates solely based on rates awarded in prior cases . . . has the impermissible effect of capping attorneys' fees." *Johnson v. Cheek Law Offices, LLC*, No. 2:11-cv-1130, 2015 WL 542189, *2 (S.D. Ohio Feb. 10, 2015) (citing *Dowling*, 320 F.App'x at 447) (quotation marks omitted).  These higher rates are also supportable given Class Counsels' breadth of experience, the nature of the case, the fact that the fee award was negotiated as part of the settlement, and the fact that counsel expended more than the negotiated award amount.

> a plaintiff proffers an itemized and detailed bill, it is well-established that conclusory allegations that the hours are excessive and that counsel employed poor billing judgment do not suffice to undermine it.

*Id.* at *3-4 (internal citations omitted).

Plaintiffs submit that Class Counsel spent 10,051.87 hours litigating this matter since this case was filed in 2005, excluding time devoted to Plaintiffs' claims against Axiall.  *See* Hurt Decl. Exhibit A (ECF No. 415-2) (6,797.57 hours); Cogan Decl. Ex. B (ECF No. 415-10) (2,210.80 hours); Macey Decl. Ex. B (ECF No. 415-13) (1,043.50 hours).  A review of Class Counsels' detailed timesheets indicates that these hours were reasonably expended in pursuit of Plaintiffs' claims.

### c. Lodestar Calculation

Class Counsel's reasonable hours at reasonable rates produce a lodestar of $4,259,275.75, not including additional work that was necessary in preparing the motion for final approval of the settlement, preparing for the Final Fairness Hearing, facilitating and overseeing the distribution of the settlement fund, and attending to any additional settlement administration issues, among other related tasks.  *See* Hurt Decl. ¶ 7 (ECF No. 415-1); Cogan Decl. ¶ 8 (ECF No. 415-18); Macey Decl. ¶ 14 (ECF No. 415-12).  Accordingly, the requested fee award of $2,047,064.24 is more than reasonable under the Lodestar analysis, particularly since in class action settlements, "[t]he Court may enhance the lodestar with a separate multiplier that can serve as a means to account for the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved."  *Mullins v. Southern Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, *5 (S.D. Ohio Jan. 18, 2019).  *See also Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 WL 5023950, *5 (S.D. Ohio Oct. 17, 2018); *In re Broadwing*, 252 F.R.D. at 381.

### 3. The *Ramey* Factors

The Sixth Circuit also requires district courts to consider the six "*Ramey* factors": (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Ramey*, 508 F.2d at 1196. "There is no formula for weighing these factors." *In re Cardinal Health*, 528 F. Supp. 2d at 764. "Rather, the Court should be mindful that each case presents a unique set of circumstances and arrives at a unique settlement, and thus different factors could predominate depending on the case." *Id.* (citing *Rawlings*, 9 F.3d at 516).

On balance, these factors support the requested fee award. First, as discussed above, Plaintiffs achieved a substantial benefit for the class. Second, an award of fees incentivizes attorneys to take such cases. *In re Broadwing*, 252 F.R.D. at 381 ("there is a public interest in ensuring that attorneys willing to represent employees in ERISA litigation are adequately paid so that they and others like them will continue to take on such cases."). Third, the fee award sought represents less than half of Class Counsel's Lodestar. Fourth, this case was both factually and legally complex, as it concerned retirees from thirteen different PPG facilities (many of which PPG argued were bound by the judgment of the Third Circuit) and the case was litigated during a period in which the governing law regarding the vesting of retiree medical benefits was in significant flux. Finally, the Undersigned has observed that both sides were represented by skilled attorneys with extensive experience.

### B. Litigation Costs and Expenses

Plaintiffs have incurred a total of $302,935.76 in costs and expenses in prosecuting this case to date. *See* Hurt Decl. ¶ 14 and Ex. D ($259,415.56); Cogan Decl. ¶ 9 and Ex. C

($25,738.45); Macey. Decl. ¶¶ 13-14 and Ex. C ($18,702.66).   Notably, Plaintiffs do not seek reimbursement for additional expenses in connection with the Final Fairness Hearing.  *Id.*  The Undersigned concludes that these costs and expenses are also reasonable and should be approved.

## IV.    CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS** that Plaintiffs' Motion for Final Approval of the Settlement Agreement and Plan of Allocation (ECF No. 418) and Plaintiffs' Motion for Attorney's Fees, Costs, and Expenses (ECF No. 413), be **GRANTED** and **FURTHER RECOMMENDS** that the Court adopt or approve the following:

1.     That the proposed settlement is "fair, reasonable, and adequate," in the best interest of the General Class and Delaware Subclass, and qualifies for approval pursuant to Rule 23(e).  The Court directs the parties to consummate the settlement in accordance with the terms and conditions of the Settlement Agreement.

2.     That the requirements of Rule 23 and due process have been satisfied in connection with the distribution of notice to the General Class and Delaware Subclass.

3.     Approve the Plan of Allocation.

4.     Approve the appointment of KCC Class Action Services, LLC as the Settlement Administrator for the purposes of distributing the Settlement Fund pursuant to the Plan of Allocation.

5.     Approve Plaintiffs' motion for attorneys' fees in the amount of $2,047,064.24 and costs and expenses in the amount of $302,935.76.

6.     Plaintiffs filed this case on January 21, 2005.  Therefore, PPG is not required to notify certain federal and state officials pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA").  "By its terms, CAFA does not apply retroactively but, rather, 'to any civil

action commenced on or after the date of [its] enactment,' February 18, 2005." *Hall v. State Farm Mut. Ins. Co.*, 215 F. App'x 423, 424 (6th Cir. 2007) (quoting Pub. L. No. 109-2, § 9, 119 Stat. 14 (2005)) (alteration in original). The original Complaint was filed against Defendant PPG Industries, Inc. before CAFA took effect.

7. Hold that the CAFA does not apply to any of the settling Defendants because the Plaintiffs' Third and Fourth Amended Complaints relate back to Plaintiffs' original Complaint. PPG Industries Ohio, Inc. and PPG Retirement Plans replaced initially named entities that were included in Plaintiffs' original Complaint by mistake. Plaintiffs then amended their complaint to correct the mistake and identify the proper defendants. More specifically, PPG Industries Ohio, Inc. replaced PPG International, Inc. in the Third Amended Complaint (ECF No. 37) and PPG Retirement Plans replaced PPG Industries Retiree Healthcare Plans in the Fourth Amended Complaint (ECF 112).

8. Approve **DISMISSAL** of this case **WITH PREJUDICE.** All Released Claims should be extinguished, discharged, and released against any and all Released Parties, without costs except as provided herein.

9. Retain jurisdiction over the case to enforce the terms of the Settlement Agreement, which is incorporated herein by reference, and to resolve any and all disputes thereunder.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy.

Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**

 _s/ *Elizabeth A Preston Deavers*_____
**ELIZABETH A. PRESTON DEAVERS**
**CHIEF UNITED STATES MAGISTRATE JUDGE**